**In re Paul & Kim URBANEC, Debtors.**

**Bankruptcy No. 84–1048.
No. CV 84–0–638.**

United States District Court,
D. Nebraska.

June 4, 1985.

Mary T. Powers, Omaha, Neb., for Paul & Kim Urbanec.

Bradley D. Holtorf, Fremont, Neb., Kenneth Shreves, Omaha, Neb., for interested parties.

## ORDER

BEAM, District Judge.

This matter is before the Court on appeal from an order of the United States Bankruptcy Court for the District of Nebraska sustaining the objection filed by appellee, Nebraska Savings & Loan Association, to the confirmation of appellants' Chapter 13 plan.

Paul and Kim Urbanec borrowed money from Nebraska Savings & Loan in February, 1983, to purchase real estate to be used as their principal place of residence. The Urbanecs executed a promissory note for the repayment of the money in monthly payments over a thirty year period. The note contained an acceleration clause enabling Nebraska Savings & Loan to accelerate the note upon a default. The Urbanecs conveyed a deed of trust to Nebraska Savings & Loan to secure the loan.

The Urbanecs defaulted on the note. On January 20, 1984, Nebraska Savings & Loan notified them that if they did not cure the default by February 20, 1984, the note

---

would be accelerated. The Urbanecs were unable to cure the default by February 20, 1984, and the note was accelerated. Nebraska Savings & Loan was scheduled to exercise its power of sale under the deed of trust on June 4, 1984. This sale did not take place because on May 31, 1984, the Urbanecs filed for relief under Chapter 13 of the Bankruptcy Code.

The Urbanecs filed a plan proposing to cure the default and pay the delinquency owing on the note. They also proposed to begin making regular monthly payments outside the plan. Nebraska Savings & Loan objected to the plan, raising three issues. The first contention was that the plan violated 11 U.S.C. § 1322(b)(2) by attempting to modify the rights of a creditor secured only by a deed of trust on the debtors' principal residence. Second, Nebraska Savings & Loan argued that the plan would not cure the default on a reasonable basis and the Urbanecs had not maintained payments during the pendency of the case in violation of 11 U.S.C. § 1322(b)(5). Finally, Nebraska Savings & Loan contended that the plan did not provide for market interest to be paid on the amount in default.

The Bankruptcy Court held a status hearing on the objections to confirmation. After the hearing the Bankruptcy Court sustained Nebraska Savings & Loan's first objection. The Urbanecs appealed and argue that the Bankruptcy Court erred in ruling that their plan is in violation of 11 U.S.C. § 1322(b)(2).

The question on appeal is whether a home mortgage that has been accelerated prior to the debtors' filing of a Chapter 13 petition can be "deaccelerated" or cured by the Chapter 13 plan. The relevant portions of section 1322(b) provide:

(b) ... the plan may—

\* \* \* \* \* \*

(2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

\* \* \* \* \* \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

Section 1322(b) lends itself to two possible interpretations as to the curing of a default on a claim secured by a security interest in real property. Under the reading urged by Nebraska Savings & Loan, deacceleration of a mortgage would be an improper modification of "a claim secured only by a security interest in real property that is the debtor's residence." Such modifications are barred by section 1322(b)(2). Subsection (b)(3), allowing the curing of *any* default would not apply and the debtor could only cure the default if, as provided in section 1322(b)(5), the last payment under the Chapter 13 plan will be due before the date the debt is due. However, according to this view, because the full debt is due upon acceleration, whenever the debt is accelerated prior to the filing of a Chapter 13 petition, section 1322(b)(5) cannot apply because any payments under the plan would be due after the date the debt is due. This interpretation, then, would bar any Chapter 13 relief enabling the debtor to save his home if the mortgage debt has been accelerated prior to the filing of a Chapter 13 petition.

The alternative position, put forth by the Urbanecs, is that the phrase "curing of any default," as used in section 1322(b)(3) and (b)(5), includes the deacceleration of a mortgage debt. Under this view the Chapter 13 plan can cure the·default and the debtors can make regular monthly mortgage payments under the original terms of the note.

Three Circuit Courts of Appeals have considered the issue raised here, and all have agreed that a Chapter 13 debtor can deaccelerate a home mortgage. The Second Circuit first confronted this question in

*In re Taddeo,* 685 F.2d 24 (2d Cir.1982), and concluded, "[w]hen Congress empowered Chapter 13 debtors to 'cure defaults,' we think Congress intended to allow mortgagors to 'deaccelerate' their mortgage and reinstate its original payment scheduled." *Id.* at 26. The Court reached this result by analyzing the meaning of the terms "curing a default" and "modify" as reflected in the legislative history of section 1322(b) and as used elsewhere in the Bankruptcy Code. The Court reasoned:

> First, we think that the power to cure must comprehend the power to 'de-accelerate.' This follows from the concept of 'curing a default.' A default is an event in the debtor-creditor relationship which triggers certain consequences—here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of 'cure' used throughout the Bankruptcy Code.

> \* \* \* \* \* \*

> Secondly, we believe that the power to 'cure any default' granted in § 1322(b)(3) and (b)(5) is not limited by the ban against 'modifying' home mortgages in § 1322(b)(2) because we do not read 'curing defaults' under (b)(3) or 'curing defaults and maintaining payments' under (b)(5) to be *modifications* of claims.

*Id.* at 26–7 (emphasis in original).

In addition, the *Taddeo* Court pointed out:

> Policy considerations strongly support this reading of the statute. Conditioning a debtor's right to cure on its having filed a Chapter 13 petition prior to acceleration would prompt unseemly and wasteful races to the courthouse. Worse, these would be races in which mortgagees possess an unwarranted and likely insurmountable advantage: wage earners seldom will possess the sophistication in bankruptcy matters that financial institutions do, and often will not have retained counsel in time for counsel to do much good. In contrast, permitting debtors in the Taddeos' position to

de-accelerate by payment of the arrearages will encourage parties to negotiate in good faith rather than having to fear that the mortgage will tip the balance irrevocably by accelerating or that the debtor may prevent or at least long postpone this by filing a Chapter 13 petition.

*Id.* at 27.

The Fifth Circuit, sitting *en banc,* reached the same result in *Grubbs v. Houston First American Savings Association,* 730 F.2d 236 (5th Cir.1984) (en banc). After a detailed review of the legislative history, *id.* at 242–6, the court concluded that a Chapter 13 debtor may deaccelerate the mortgage and restore the original payment schedule. *Id.* at 246. The Seventh Circuit has agreed with this ruling in *Matter of Clark,* 738 F.2d 869 (7th Cir.1984).

The Court finds the reasoning in these decisions persuasive. The language and legislative history of section 1322(b) lead to the conclusion that Congress intended to allow a Chapter 13 debtor to deaccelerate a mortgage. A contrary result would clearly run counter to the rehabilitative intent of Chapter 13. Furthermore, because the filing of a Chapter 13 petition prior to the acceleration of the debt would certainly enable the debtor to save his home, *Grubbs,* 730 F.2d at 240, the position being rejected here would encourage debtors to rush into bankruptcy rather than try to solve their financial difficulties. This result would be entirely inconsistent with Congress' intent as embodied throughout the Bankruptcy Code.

For the foregoing reasons, the Bankruptcy Court erred in sustaining Nebraska Savings & Loan's objection to the Chapter 13 plan. The plan may deaccelerate the mortgage and reinstate the original payment schedule.

Accordingly,

IT IS ORDERED that the Bankruptcy Court's judgment is reversed and remanded for consideration of the Urbanecs' Chapter 13 plan and the other objections thereto.