**In re Coleman RAGSDALE and Margie Jean Ragsdale, Debtors.**

**No. 93–00726.**

United States Bankruptcy Court,
N.D. Alabama, S.D.

June 16, 1993.

Amended June 17, 1993.

---

Alan B. Jaffe, Birmingham, AL, for debtors.

Christopher Kern, Mobile, AL, for Resolution Trust Corp.

### MEMORANDUM OPINION AND ORDER

TAMARA O. MITCHELL, Bankruptcy Judge.

These proceedings are before the Court on the Objection to Confirmation of the Debtors' plan of reorganization and the Motion for Relief from Stay filed by the Resolution Trust Corporation, as conservator for Altus Federal Savings Bank. Appearing at the April 20, 1993, hearing on these proceedings were Alan B. Jaffe, attorney for the Debtors, and Christopher Kern, attorney for the Resolution Trust Corporation. This Court has jurisdiction. 28 U.S.C. § 1334. These are core proceedings. 28 U.S.C. § 157(b)(2)(G), (L), (O). The Court has considered the facts, the arguments of counsel, and the law, and concludes that the Movant is not entitled to the relief requested, and that the Debtors' Chapter 13 plan is due to be confirmed.[1]

The parties have submitted these proceedings on stipulated facts. The Debtors, Coleman and Margie Jean Ragsdale, are the borrowers under a promissory note dated March 8, 1990, secured by a properly recorded mortgage of the same date. The RTC is the assignee of the note and mortgage. The RTC conducted a properly noticed foreclosure sale of the property on January 19, 1993, and was the successful bidder at the sale, purchasing the property for $16,410.04. Approximately $5,000.00 remained as an unsecured deficiency balance on the mortgage. On January 25,

1993, the RTC recorded its deed. On January 28, 1993, the Ragsdales filed a petition under Chapter 13 of the Bankruptcy Code. In their proposed plan of reorganization they sought to cure the default on the mortgage indebtedness to the RTC by paying the arrearage through the Chapter 13 Trustee, and to pay post-petition installments directly to the RTC. The RTC objects to this plan, alleging that following the foreclosure the Ragsdales cannot cure a default in the mortgage under Section 1322(b)(3), and that the debt is no longer a "long-term debt" within the meaning of Section 1322(b)(5). RTC also filed a motion for relief from the automatic stay imposed by Section 362.

The issue to be decided is whether a debtor, following the foreclosure of a mortgage of property used as his principle residence, may reinstate the mortgage, decelerate the indebtedness, and resume payments as the Ragsdales have proposed. This Court has visited the issue before. *In re Crochen*, No. 92–2210 (Bankr.N.D.Ala. June 10, 1992). In that case the Court ruled that a foreclosure sale is voidable and a debtor may set aside the sale and include a mortgage arrearage in the plan of reorganization and reinstate the mortgage payments according to the contract's pre-default terms. For the reasons set forth below, the Court sees no reason to retreat from that ruling.

This issue has been widely addressed. Typically, the result is that the debtor will be denied the opportunity to retain his home if his bankruptcy petition is filed following some particular act by the creditor. In some cases, this act may be the acceleration of the debtor's mortgage and the demand of immediate payment of all sums owing. In a majority of the cases, the act that terminates the debtor's right to reverse the effects of acceleration and propose a Chapter 13 plan that provides for retention of his home is the creditor's filing for a judicial foreclosure of the mortgage. In other cases, the sale that follows the

---

1. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

judicial foreclosure is the terminating event, while in other cases the lapse of the debtor's rights of redemption prohibits reversal of the contractual acceleration. A summary of the cases in the judicial circuits shows the variety of treatment of a debtor's mortgage in Chapter 13.

### First Circuit

*In re Tucker*, 131 B.R. 245 (Bankr.D.Me. 1991) (debtor may cure default until the expiration of a period of redemption).

### Second Circuit

*In re Taddeo*, 685 F.2d 24 (2d Cir.1982) (no expressed time limit on the debtor's right to cure); *In re Valente*, 34 B.R. 804 (Bankr.D.Conn.1982) (cannot cure after foreclosure sale; bankruptcy courts cannot undo state court judgments); *In re Garner*, 13 B.R. 799 (Bankr.S.D.N.Y.1981) (may cure before foreclosure judgment; pre-*Taddeo* ); *In re Acevedo*, 9 B.R. 852 (Bankr.E.D.N.Y.1981) (may cure after a foreclosure judgment), *aff'd*, 26 B.R. 994 (E.D.N.Y.1982); *In re Taddeo*, 9 B.R. 299 (Bankr.E.D.N.Y.1981) (may cure before foreclosure sale).

### Third Circuit

*In re Roach*, 824 F.2d 1370 (3d Cir.1987) (cannot cure after foreclosure judgment); *In re Epps*, 110 B.R. 691 (E.D.Pa.1990) (may cure before foreclosure judgment); *In re Rivera*, 108 B.R. 553 (Bankr.E.D.Pa. 1988) (may cure before foreclosure sale if entire balance is paid); *In re Lee*, 86 B.R. 350 (Bankr.D.N.J.1988) (may not cure after foreclosure judgment); *In re Brown*, 75 B.R. 1009 (Bankr.E.D.Pa.1987) (may not cure after foreclosure sale); *In re Skelly*, 38 B.R. 1000 (D.Del.1984) (may not cure after foreclosure judgment); *In re Morris*, 73 B.R. 358 (Bankr.D.N.J.1987) (same); *In re Rouse*, 48 B.R. 236 (Bankr.E.D.Pa.1985) (foreclosure sale cuts off debtor's rights in property).

### Fourth Circuit

*In re DiCello*, 80 B.R. 769 (Bankr. E.D.N.C.1987) (cure not allowed after foreclosure sale); *In re Chitwood*, 54 B.R. 396 (Bankr.W.D.Va.1985) (cure may occur if foreclosure deed has not been delivered to purchaser); *In re Stokes*, 39 B.R. 336 (Bankr.E.D.Va.1984) (no expressed time limit on debtor's right to cure); *In re Wallace*, 31 B.R. 64 (Bankr.D.Md.1983) (cure not allowed after foreclosure sale).

### Fifth Circuit

*Grubbs v. Houston First Sav. Ass'n*, 730 F.2d 236 (5th Cir.1984) (may cure after acceleration); *In re Dixon*, 151 B.R. 388 (Bankr.S.D.Miss.1993) (same); *In re Boyd*, 107 B.R. 541 (Bankr.N.D.Miss.1989) (cure not allowed after foreclosure sale).

### Sixth Circuit

*In re Glenn*, 760 F.2d 1428 (6th Cir.) (cannot cure after foreclosure sale), *cert. denied sub nom. Miller v. First Federal of Michigan*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *In re Rutterbush*, 34 B.R. 101 (E.D.Mich.1982) (cannot cure after acceleration); *In re Soderlund*, 18 B.R. 12 (S.D.Ohio 1981) (same); *In re Dochniak*, 96 B.R. 100 (Bankr.W.D.Ky.1988) (may cure after acceleration); *In re McCreery*, 72 B.R. 275 (Bankr.N.D.Ohio 1987) (no cure allowed after foreclosure sale); *In re Thomas*, 59 B.R. 758 (Bankr.N.D.Ohio) (same); *In re Threet*, 60 B.R. 87 (Bankr. N.D.Ohio 1986) (same); *In re Marshall*, 54 B.R. 309 (Bankr.W.D.Mich.1985) (same); *In re Miller*, 49 B.R. 31 (Bankr.W.D.Ky.1985) (cure allowed after foreclosure judgment but before sale); *In re Hubbard*, 23 B.R. 671 (Bankr.S.D.Ohio 1982) (may cure after foreclosure judgment); *In re James*, 20 B.R. 145 (Bankr.E.D.Mich.1982) (cure not allowed after sale); *In re Allen*, 17 B.R. 119 (Bankr.N.D.Ohio 1981) (may not cure after acceleration), *rev'd*, 42 B.R. 360 (N.D.Ohio 1984); *In re Anderson*, 16 B.R. 697 (Bankr.S.D.Ohio 1982) (may not cure after foreclosure judgment); *In re Land*, 14 B.R. 132 (Bankr.N.D.Ohio 1981) (may cure after sale if entire balance is included in plan).

### Seventh Circuit

*In re Tynan*, 773 F.2d 177 (7th Cir.1985) (may not cure after foreclosure sale); *In re*

*Clark*, 738 F.2d 869 (7th Cir.1984) (may cure after foreclosure judgment); *In re Britton*, 35 B.R. 373 (N.D.Ind.1982) (may not cure after foreclosure judgment); *In re Clark*, 133 B.R. 123 (Bankr.N.D.Ill.1991) (may cure after foreclosure judgment); *In re Beaty*, 116 B.R. 112 (Bankr.N.D.Ill.1990) (foreclosure sale terminates all rights of debtor in property); *In re Masters*, 104 B.R. 83 (Bankr.S.D.Ind.1989) (may cure after foreclosure judgment, but sale cuts off right to cure); *In re Daniels*, 91 B.R. 51 (Bankr.N.D.Ill.1988) (same); *In re Schnupp*, 64 B.R. 763 (Bankr.N.D.Ill.1986) (same); *In re Ristich*, 57 B.R. 568 (Bankr.N.D.Ill.1986) (may not cure after foreclosure sale if period of redemption has expired); *In re Langguth*, 52 B.R. 572 (Bankr.N.D.Ill.1985) (same); *In re Jenkins*, 14 B.R. 748 (Bankr.N.D.Ill.1981) (may not cure after foreclosure judgment).

### Eighth Circuit

*Justice v. Valley Nat'l Bank*, 849 F.2d 1078 (8th Cir.1988) (may not cure after foreclosure sale; redemption period cannot be extended); *In re Urbanec*, 49 B.R. 638 (D.Neb.1985) (may cure after acceleration); *In re Eynetich*, 98 B.R. 966 (Bankr.D.Neb.1988) (may cure after foreclosure judgment but not after sale); *In re Ashton*, 63 B.R. 244 (Bankr.D.N.D.1986) (same).

### Ninth Circuit

*In re Metz*, 820 F.2d 1495 (9th Cir.1987) (may cure after acceleration); *In re Braker*, 125 B.R. 798 (Bankr. 9th Cir.1991) (cure not allowed after foreclosure sale; no mortgage remains against which debtor may exercise a statutory right to redemption); *In re Ivory*, 32 B.R. 788 (Bankr.D.Or.1983) (may cure after foreclosure sale and before running of statutory redemption period).

### Tenth Circuit

*In re Thompson*, 894 F.2d 1227 (10th Cir.1990) (cure allowed before foreclosure sale; however, the court indicates in dictum that the right to cure should extend to the end of a statutory redemption period); *In re Latimer*, 110 B.R. 968

(W.D.Okla.1989) (may cure after acceleration); *In re Davis*, 16 B.R. 473 (D.Kan.1981) (same); *In re Klapp*, 80 B.R. 540 (Bankr.W.D.Okla.1987) (may cure if petition is filed after judicial sale has been held but not confirmed); *In re Robertson*, 4 B.R. 213 (Bankr.D.Colo.1980) (cannot cure after foreclosure by paying amount of default).

### Eleventh Circuit

*In re Terry*, 780 F.2d 894 (11th Cir.1985) (may cure acceleration of mortgage); *Boromei v. Sun Bank of Tampa*, 92 B.R. 516 (M.D.Fla.1988) (may not cure after foreclosure sale); *In re Detter*, 141 B.R. 221 (debtor loses property rights following foreclosure); *In re Read*, 131 B.R. 188 (Bankr.M.D.Ala.1991) (cure not allowed if debtor has lost redemption right); *In re Dickerson*, 130 B.R. 110 (Bankr.S.D.Ala.1991) (debtor may exercise statutory right of redemption in Chapter 13 plan); *In re Telson*, 121 B.R. 662 (Bankr.S.D.Fla.1990) (may cure before foreclosure sale); *In re Branker*, 113 B.R. 786 (Bankr.S.D.Fla.1990) (may not cure after foreclosure sale, even if statutory right of redemption exists); *In re Pitts*, 97 B.R. 83 (Bankr.M.D.Fla.1989) (cure not allowed after foreclosure); *In re Westmore*, 75 B.R. 110 (Bankr.N.D.Fla.1987) (same); *In re Cheeks*, 24 B.R. 477 (Bankr.M.D.Ala.1982) (may cure without regard to acceleration if no sale has occurred); *In re Smith*, 19 B.R. 592 (Bankr.N.D.Ga.1982) (may cure after acceleration).

### District of Columbia

*In re Flowers*, 94 B.R. 3 (Bankr.D.C.1988) (foreclosure sale eliminates right to cure).

A leading case of those listed above is the Sixth Circuit's decision in *Glenn*. *Glenn* is often followed, and is the case upon which the RTC most strongly relies. The case consolidated three Chapter 13 proceedings for disposition on appeal and involved two distinct factual scenarios. In one, the debtors filed a Chapter 13 petition following a judgment of foreclosure, and in the two other cases the debtors filed

Chapter 13 petitions following the sale of their residences but before the running of the statutory period of redemption. After lamenting that Congress did not speak specifically enough concerning the termination of the right to cure under Section 1322, the Sixth Circuit, noting that "[a]ll courts agree that at some point in the foreclosure process, the right to cure is irretrievably lost," 760 F.2d at 1435, chose the date of sale as the cut-off of the debtor's right to cure. The Sixth Circuit said this was a "pragmatic" result, "one that ... works the least violence to the competing concerns evident in the language of the statute [and] one that is most readily capable of use." *Id.* The Sixth Circuit then listed its reasons for choosing this date over other available ones. The court also admitted that the reasons were open to criticism. This Court will accept the challenge, with the reasons given by the *Glenn* court discussed separately.

(a) The language of the statute is, to us, plainly a compromise.... Picking a date between two extremes, is likewise a compromise of sorts.

*Id.* The compromise of Section 1322 that the court refers to was the meeting ground between making Chapter 13 a more attractive bankruptcy option than Chapter 7 and the concern for the health of the home mortgage industry. However, the result to be achieved is that which was intended by the legislature and perhaps the *Glenn* court opinion reflects that court's view that although Chapter 13 should be encouraged and its remedies be as broad as possible those remedies should not tread too heavily on residential mortgages, which received some protection from Congress in enacting the Code. This Court does not view allowing a debtor to utilize Chapter 13 to keep his home and eventually pay the entire debt owed on it[2] as unleashing a variety of ills on the home mortgage industry. Nor does this Court feel that allowing a debtor to cure a default on a home mortgage will

"decrease the attractiveness of home mortgages as investment opportunities," as the Sixth Circuit suggests. *Id.* at 1434. While it is true that the power of foreclosure is a vital part of the lender's security, it is also true that mortgage lenders are generally not interested in owning property but rather in collecting money. Allowing debtors every opportunity to achieve their goal of home ownership and to simultaneously achieve the monetary objectives of the lender, so long as the lender's position is protected and not at risk of loss, will result in the best compromise consistent with the provisions of Chapter 13.

(b) The sale of the mortgaged property is an event that all forms of foreclosure, however denominated, seem to have in common.... [T]he date of the sale is a measurable, identifiable event of importance in the relationship of the parties. It is at the heart of realization of the security.

*Id.* at 1435. This is an accurate statement but in this Court's view fails to recognize one important factor: although a foreclosure sale is common to all cases, a debtor's rights after foreclosure vary from state to state, but are subject to protection by this Court. In many cases, the debtor will have a right to redeem, which will be lost under the Sixth Circuit's approach. Even the Sixth Circuit acknowledged that Section 1322 is broadly drafted to account for the range of state laws and practices. *Id.,* n. 3. Therefore, although the occurrence of a sale is a common date and may be the easiest "cut-off" date, this result is not appropriate if rights of the debtor are terminated by choosing a convenient or practical date or occurrence.

(c) Although the purchaser at the sale is frequently the security holder itself, the sale introduces a new element—the change of ownership and, hence, the change of expectations—into the relationship which previously existed.

---

**2.** The Court is not suggesting, for example, that a Chapter 13 plan may be used to rewrite the contract that existed between the parties and allow the debtor extra years to pay his mortgage or allow the debtor to pay less than what the terms of the contract demand. Under the system that the Court envisions, the home mortgage lender will get exactly what it has bargained for in the same amount of time.

*Id.* The key expectation with which the lender is concerned is the expectation that it will get its money. This expectation is best met, as previously mentioned, by a cure of the default and reinstatement of the mortgage under its original terms.

> (d) The foreclosure sale normally comes only after considerable notice giving the debtor opportunity to take action by seeking alternative financing or by negotiating to cure the default or by taking advantage of the benefits of Chapter 13. Therefore, setting the date of sale as the cut-off point avoids most of what some courts have described as the "unseemly race to the courthouse."

*Id.* at 1435–36. In an ideal world, all persons have complete knowledge of all their financial affairs and know at all times all steps creditors may be taking against them and the impact of those actions. In an ideal world, all persons are astute enough, and have the funds, to hire lawyers to negotiate for them when the situation is bleak. Also in an ideal world, there is no need for bankruptcy. In the real world, however, people come home to find their belongings repossessed, their doors barred, and judgments taken against them. It is not unthinkable that some people will seek help in the bankruptcy court only after drastic action has been taken against them. Therefore, the fact that considerable notice has been provided does not necessarily justify a "cut-off" date that deprives individuals of certain rights that could otherwise be protected without unduly prejudicing the other party.

> (e) Any earlier date meets with the complaint that the rights conferred by the statute upon debtors to cure defaults have been frustrated.

*Id.* at 1436. This statement is true, but it also takes a limited view of the power to cure defaults granted by Section 1322 and assumes that using the sale date as a cut-off does not similarly deprive a debtor of every opportunity to cure a default.

> (f) Any later date meets with the objection that it largely obliterates the protection Congress intended for mortgagees of private homes as distinguished from other secured lenders.

*Id.* The plain language of the statute at issue is that home mortgage lenders' rights may not be "modified." That requirement, however, is itself subsequently modified by the cure provision. *Terry, supra.* The statutory scheme, therefore, indicates that the only prohibited modification is a change in terms of the original contract regarding payments and time. A right to accelerate may be altered and in *Glenn* the Sixth Circuit held that cure of an acceleration may be allowed under Section 1322.

> (g) Any later date also brings with it the very serious danger that bidding at the sale itself, which should be arranged so as to yield the most attractive price, will be chilled; potential bidders may be discouraged if they cannot ascertain when, if ever, their interest will become finalized.

*Id.* If the sale occurs in a state that has a statutory period of redemption, such as Alabama, the same concern exists. If there is any chilling effect, it has not been shown that it will be any greater than the one-year period of redemption under Alabama law may cause. This argument, therefore, is not persuasive in a jurisdiction that allows a redemption period after a foreclosure sale.

The *Glenn* approach, though quite carefully put forth, has a different impact when applied to a bankruptcy case filed in a state with a statutory period of redemption. This Court, therefore, declines to follow this approach.

■ Aside from *Glenn*, many of the cases rely on the proposition that a federal court should have respect for the state court judgment of foreclosure. *See, e.g., Valente, supra; Britton, supra.* The interest of comity between federal and state law should be protected, but this interest includes the obligation of a federal court to protect a right that arises under state law. In addition, respect for a state court's judgment as a justification for denial of a debtor's right to protect a right to redeem and thus a right to cure, when viewed in the context of the bankruptcy laws, is weak. The Bankruptcy Code provides many vehi-

cles by which a state court judgment or its effects can be undone to achieve the goals and policies intended by bankruptcy laws. A judicial lien can be avoided pursuant to Section 522. Section 548, in some cases, might allow a foreclosure sale to be set aside because it amounts to a fraudulent conveyance. A broad range of debts that might be founded on a state court judgment can be found dischargeable under Section 523. A state court judgment for fraud, for example, might be dischargeable in bankruptcy because of the higher standard of malice under Section 523(a)(2).[3] Finally, the automatic stay provided by Section 362 will operate to suspend collection of state court judgments obtained prepetition or void judgments if obtained postpetition. Therefore, the argument that a bankruptcy court should not interfere with a state court judgment ignores the operation of other sections of the Code.

Other cases rely on the doctrine of merger, which states that the debtor's note and mortgage are merged into the foreclosure judgment, and hold that the debtor is left with nothing to cure in a Chapter 13 plan. *See, e.g., Morris, supra.* This theory is simply not available under Alabama law. Because Alabama does not follow the judicial foreclosure proceedings found in other jurisdictions, there is nothing for the note and mortgage to merge into. In Alabama, real property subject to a note that has been accelerated is sold without resort to the courts and the obtaining of a judgment of foreclosure and remains subject to a debtor's right to redeem for a period of one year.

It is on this last point that the cases listed above fail to be instructive.[4] Although some courts consider the debtor's right to redeem, *e.g., Roach, supra; James, supra,* they rarely protect the right. *E.g., Glenn, supra; Roach, supra. Roach* goes as far as declaring that after a foreclosure judgment, no substantial federal interest remains that would "justify ignoring property interests created by the judgment of a [state] court." 824 F.2d at 1377. This Court is not willing to follow that interpretation, and suggests that there is indeed a strong federal interest in a debtor's retention of what in most cases will be his most significant asset, his home. The loss of the home could well lead to the debtor's inability or unwillingness to go forward with a Chapter 13 plan, and in some cases may send the debtor into the less favored Chapter 7, with a concomitant loss to other creditors. In addition, the denial of the right to redeem is inconsistent with Eleventh Circuit opinions discussed below and also leads to what this Court believes is an anomalous situation; by filing for the protection of the federal bankruptcy laws, the debtor gives up one of the most important rights provided by the states to owners of real property. The right of redemption should not be so lightly dismissed, as it is an important property right that has been declared, at least in this circuit, to be property of the debtor's bankruptcy estate.

This Court believes its approach is consistent with cases in this circuit. The Eleventh Circuit has indicated that the Alabama statutory right of redemption is a property right within the jurisdiction of the bankruptcy court. *In re Saylors,* 869 F.2d 1434 (11th Cir.1989) (citing *Wragg v. Federal Land Bank of New Orleans,* 317 U.S. 325, 63 S.Ct. 273, 87 L.Ed. 300 (1943)). *Saylors* also notes that the statutory right of redemption survives the filing of a bankruptcy petition. Although *Saylors* does not specifically state that the right to redeem may be exercised through a Chapter 13 plan, that result seems obvious. Otherwise, there would be no reason to denominate the right to redeem as a property right subject to the jurisdiction of the bankruptcy court, for a right that one cannot use is not a right at all.

---

3. While it is true that the dischargeability proceeding may merely declare the debt dischargeable, leaving a previously obtained judgment technically intact, there is no conceptual difference between a judgment that has been set aside and a judgment that is rendered unenforceable.

4. Of course, the lack of discussion of a statutory right to redemption in some cases is a function of state law. Only about half the states allow some type of statutory redemption. *Thompson,* 894 F.2d at 1230. The issue, therefore, never arises in many cases.

This leads to the ultimate question: If a statutory right of redemption may be exercised in a Chapter 13 plan, must it be exercised strictly by the terms of state law, which would require the entire debt to be paid within one year, or may the right of redemption be used to bring the debtor's interest into the Chapter 13 plan, where it may be dealt with as an accelerated debt? This Court believes the latter is true, and holds that where a debtor files a Chapter 13 petition following a foreclosure sale of his residence, he may pay the pre-foreclosure sale arrearage through the Chapter 13 trustee, while maintaining payments under the terms of the original contract.

■ The Court believes this is the proper holding for several reasons. First, the concept of curing a default, as used in Section 1322, means "taking care of the triggering event and returning to pre-default conditions." *Taddeo*, 685 F.2d at 26–27. *Taddeo* notes that a default causes certain consequences. Although in the context of that case the consequence was acceleration of the debtor's mortgage, it cannot be successfully argued that foreclosure is not a "consequence of default." Under the *Taddeo* reasoning, then, a foreclosure may be nullified. The cases that hold that cure is not allowed after a foreclosure sale essentially modify the plain language of Section 1322(b)(5) to make it read that a Chapter 13 plan may "provide for the curing of any default *unless a foreclosure has taken place*." That language cannot be imputed to the statute, which clearly states that a debtor may cure *any* default. Whatever consequences the default may have triggered are meaningless; the default still exists and may be cured pursuant to a Chapter 13 plan. To hold otherwise fails to provide a debtor every opportunity to reorganize under Chapter 13 and to provide for all of his debts.

The second reason the Court believes cure may be allowed even after a foreclosure sale has occurred but when a statutory period of redemption remains is the decision of the Supreme Court in *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938). In that case, the Supreme Court, construing a provision of the former Bankruptcy Act that allowed debtors to maintain their residences, found absolutely no distinction between a debtor in default and a debtor holding a right of statutory redemption.

> While there may be no relation of debtor and creditor between the bankrupt and the purchaser of his property at a judicial sale, we think the purchaser at a judicial sale does enter into the radius of the bankruptcy power over debts.... The debtor has a right of redemption of which the purchaser is advised, and until that right of redemption expires the rights of the purchaser are subject to the power of Congress over the relationship of debtor and creditor and its power to legislate for the rehabilitation of the debtor. The person whose land has been sold at foreclosure sale and now holds a right of redemption is, for all practical purposes, in the same debt situation as an ordinary mortgagor in default; both are faced with the same ultimate prospect, either of paying a sum certain of money, or of being completely divested of their land.

*Id.* at 514–15, 58 S.Ct. at 1032.

According to this passage, no difference exists between a debtor in default and a debtor whose mortgage has been foreclosed but who holds a right of redemption. And if a debtor in default may cure by reversing the effects of acceleration of his mortgage and maintaining payments pursuant to the terms of the original contract, so may a debtor whose mortgage has been foreclosed.

■ Aside from the previously mentioned reasons justifying cure of a foreclosed mortgage is that a common thread running through many of the cases is something that might conveniently be termed the "completion of sale" principle. That is, the time at which the debtor has been wholly divested of *any* rights in the property is the point at which cure becomes unavailable. *See, e.g., Clark, supra; Klapp, supra; Chitwood, supra; Boyd, supra.* This concept, the Court believes, is entirely more pragmatic than the approach so nomi-

nated in *Clark* because it better protects the interests that a debtor may have following foreclosure and accounts for the variety of state laws regarding foreclosure. Under this approach in a state with no statutory right to redeem, a Chapter 13 plan could not cure a mortgage arrearage if all prerequisites to a valid and final foreclosure sale have been met. The prerequisite may be the fall of the auctioneer's hammer, if that is the law of the state, or it may be the delivery of the deed to the purchaser. In a state with a statutory right of redemption, such as Alabama, the prerequisite to a completed sale would be the running of the redemption period so long as the debtor retains the right to redeem and has not forfeited that right.[5] Whatever the case, a sale should not be considered completed until legal title has fully vested in the purchaser at a foreclosure sale and is not subject to any contingency.[6] Although this approach would not be uniform among the states, the desire for uniformity should not be exalted over a practice that would eviscerate the Section 541 definition of property of the estate.

▮ The RTC has also contended that cure may not be allowed under Section 1322, because there is no long-term debt remaining. A strict interpretation of the Code might support this view. Section 1322(b)(5) speaks of "secured claim[s] on which the last payment is due after the date on which the final payment under the plan is due," which would indicate that a debt that has been accelerated and is now owed as one lump sum does not fit the type of debt for which cure is allowed. The Court, however, disagrees with this interpretation and approves of the view that the "last payment" language of Section 1322(b)(5) refers to the date of the last payment of the original note rather than the date the accelerated debt is due.

*Clark,* 738 F.2d at 874. *See also, Taddeo, supra; In re Allen,* 42 B.R. 360 (N.D.Ohio 1984).

Based on the foregoing, it is

ORDERED, ADJUDGED, AND DECREED that the Objection to Confirmation of the Debtor's plan filed by the Resolution Trust Corporation is DENIED. It is further

ORDERED, ADJUDGED, AND DECREED that the Motion for Relief from Stay filed by the Resolution Trust Corporation is DENIED.

## AMENDMENT TO MEMORANDUM OPINION AND ORDER

This Court having previously entered a Memorandum Opinion and Order in the proceeding on the Resolution Trust Corporation's Motion for Relief from Stay and the RTC's Objection to Confirmation of the Debtors' Chapter 13 plan, and this Court having determined that the relief granted in the previous order was improper, it is

ORDERED, ADJUDGED, AND DECREED that the terms of the previous order denying the Resolution Trust Corporation's Objection to Confirmation of the Debtors' Chapter 13 plan denying the RTC's Motion for Relief from Stay are STRICKEN.

It is further

ORDERED, ADJUDGED, AND DECREED that the Resolution Trust Corporation's Objection to Confirmation of the Debtor's Chapter 13 plan is OVERRULED.

It is further

ORDERED, ADJUDGED, AND DECREED that the Resolution Trust Corporation's Motion for Relief from Stay is DENIED in part and GRANTED in part. The motion is DENIED as to payments neces-

---

**5.** Under Alabama law, a debtor whose mortgage has been foreclosed must vacate the premises within ten days of receiving a demand for possession by the foreclosing party. Ala.Code § 6–5–251 (1991). If the debtor does not vacate, the right to redeem is lost by operation of law. *Id.*

**6.** It is said that a foreclosure sale held pursuant to Alabama law vests legal title in the purchaser.

*Jordan v. Ogden,* 237 Ala. 626, 188 So. 235 (1939). However, this "vesting" of title remains subject to the redemption statute, so a better statement would be that the purchaser at a foreclosure sale acquires an interest contingent on the former owner's election not to exercise his right to redeem.

sary to cure the default; said payments shall be part of the Debtor's Chapter 13 plan. The motion is GRANTED as to future regular monthly payments beginning July 1, 1993, and if the Debtors fail to make any monthly payment in the month in which it comes due, the Resolution Trust Corporation is granted relief from the automatic stay to enforce its rights as to this real property.