## COMMERCIAL FEDERAL MORTGAGE CORPORATION, Appellant,

v.

## Bruce Craig SMITH, Appellee.

### No. CV–94–H–1016–S.

United States District Court,
N.D. Alabama,
Southern Division.

July 29, 1994.

Vicki A. Bell, Stephens Millirons Harrison & Williams, Huntsville, AL, for appellant Commercial Federal Mortg. Corp.

Bradford W. Botes, Bond & Botes, Birmingham, AL, for appellee Bruce Craig Smith.

David P. Rogers, Jr., Chapter 13 Standing Trustee, Birmingham, AL.

## MEMORANDUM OF OPINION

HANCOCK, District Judge.

This case comes before the court on appeal from the United States Bankruptcy Court for the Northern District of Alabama, Southern Division; jurisdiction is invoked pursuant to 28 U.S.C. § 158(a). For reasons set forth more fully below, the decision of the Bankruptcy Court is due to be affirmed.

The relevant facts are not disputed.[1] The debtor, Bruce Craig Smith (hereinafter referred to as "the Debtor"), filed a voluntary petition under 11 U.S.C. § 1301 *et seq.* Commercial Federal Mortgage Corporation ("the Creditor") was listed as a secured creditor, it being the holder of a mortgage on the Debtor's principal residence in the amount of $84,939.00. The Debtor had earlier defaulted under the terms of the note and mortgage by failing to pay the monthly installment payments when due. On October 18, 1993, the Creditor had conducted a valid foreclosure sale of the encumbered property under the power of sale contained in the mortgage. Thereafter, the Creditor sent to the Debtor a letter notifying him that he had 10 days within which to vacate the property. The parties agree that the debtor vacated the property within the ten days required under state law, thereby preserving his statutory right of redemption under Alabama Code § 6–5–251 (1993).[2]

---

1. The parties stipulated in the underlying action that the debtor had retained his statutory right of redemption granted by Alabama law. Thus, the only issue before the Bankruptcy Court was whether the debtor could exercise his right of redemption in the manner proposed in his Chapter 13 plan.

2. Alabama Code Section 6–5–251 provides, in pertinent part:

   (a) The possession of the land must be delivered to the purchaser or purchaser's transferees by the debtor or mortgager if in their possession or in the possession of anyone holding under them by privity of title, within 10 days after written demand for the possession has been made by, or on behalf of, the purchasers or purchaser's transferees.

   \*   \*   \*   \*   \*   \*

   (c) Failure of the debtor or mortgagor or anyone holding possession under him or her to comply with the provisions of this section forfeits the right of redemption of the debtor or one holding possession under the debtor.

Subsequent to the foreclosure sale, the Creditor instituted eviction proceedings to regain possession of the property. On December 29, 1993, the Debtor filed a voluntary Chapter 13 proceeding. The only interest the Debtor possessed in his property at the time of his bankruptcy petition was his statutory right of redemption. In his Chapter 13 plan, the Debtor proposed to reinstate the foreclosed mortgage by paying the pre-petition "arrearage" through his Chapter 13 plan while maintaining regular monthly payments on the "debt" directly to the Creditor.

On January 13, 1994, the Creditor moved for relief from the stay imposed by the Bankruptcy Court in order to complete its eviction proceedings. On March 7, 1994, the Bankruptcy Court denied the Creditor's motion and held that the Debtor had retained his statutory right of redemption granted by Alabama law and that the right of redemption could be exercised in the manner proposed by the Chapter 13 plan. In its opinion the Bankruptcy Court cited and relied upon its prior decision of *In re Ragsdale*, 155 B.R. 578 (Bankr.N.D.Ala.1993).

On March 17, 1994, the Creditor filed its Notice of Appeal. At issue is whether a debtor whose primary residence has been sold in pre-petition foreclosure proceedings but who has preserved his statutory right of redemption may, prior to the expiration of that statutory right of redemption, cure his default under the mortgage and redeem his property after foreclosure sale by paying arrearage through his Chapter 13 plan and maintaining regular mortgage payments "outside" the plan.

The Creditor argues that at some point in the foreclosure process the debtor's right to cure a default is "irretrievably lost," and while the Bankruptcy Code provides no "clear cut-off point," the Creditor maintains that the date on which the debtor loses his statutory redemption right should be the date of the foreclosure sale of his former property.

▇▇▇ Neither the Eleventh Circuit Court of Appeals nor the Alabama Supreme Court has addressed this issue. Under Alabama law, real estate may be redeemed by a debtor within one year from the date of the foreclosure sale. Ala.Code § 6–5–248(b) (1993). To retain the statutory right of redemption, the debtor in possession of real estate that has been subject to a foreclosure must vacate the property within ten days of a written demand for possession. Ala.Code § 6–5–251.

The Eleventh Circuit has held that the Alabama statutory right of redemption is a property right within the jurisdiction of the bankruptcy courts. *See In re Saylors*, 869 F.2d 1434 (11th Cir.1989) (citing *Wragg v. Federal Land Bank of New Orleans*, 317 U.S. 325, 329, 63 S.Ct. 273, 275–76, 87 L.Ed. 300 (1943)). The Bankruptcy Court which resolved the underlying action relied upon its prior decision, *In re Ragsdale*, in which it held that a debtor could cure his prepetition default on his home mortgage by making payments through the Chapter 13 trustee, and simultaneously maintain his regular mortgage payments directly to the claimant, notwithstanding the fact that the prepetition default had already resulted in a foreclosure sale. *See In re Ragsdale*, 155 B.R. 578 (Bankr.N.D.Ala.1993).[3]

**3.** In *Ragsdale*, the court was faced with a situation in which the debtors had borrowed money under a promissory note which was secured by a properly-recorded mortgage. The note and mortgage were assigned to the Resolution Trust Corporation (the "RTC"), which thereafter noticed a foreclosure sale and purchased the property at the sale. The debtors then filed a Chapter 13 petition and proposed in their plan of reorganization to cure the default on the mortgage indebtedness to the RTC by paying the arrearage through the Chapter 13 Trustee and to pay postpetition installments directly to the RTC. The RTC objected to the plan and sought relief from the automatic stay, arguing that Section 1322(b)(3) did not allow the debtors to cure a

default in their mortgage following a foreclosure sale.

The Bankruptcy Judge rejected the arguments of the RTC and held that debtors, notwithstanding foreclosure of the mortgage of property used as their principal residence, could reinstate the mortgage, decelerate the indebtedness and resume payments as the debtors had proposed. In so ruling, the Bankruptcy Court found that the event which terminates a debtor's right to cure under Section 1322 was not the foreclosure sale but rather the expiration of the statutory right of redemption. The Bankruptcy Court reasoned that this date was consistent with the compromise inherent in Section 1322 between preserv-

The court finds the opinion in the *Ragsdale* case to be well-reasoned and persuasive. While courts in other circuits may have chosen the date of the foreclosure sale as the ultimate "cut-off" date on which the statutory right of redemption is lost, the court is persuaded by the arguments made in *Ragsdale* that to so hold in this case would work an unnecessary hardship on the debtor; moreover, for reasons set forth above, the court does not view such a holding as undermining the investment potential of the home mortgage industry. In addition, the court does not view its determination as one which "suspend[s] the operation of State redemption law;" to the contrary, the holding in *Ragsdale* allowed Alabama state redemption laws to be utilized by the debtor through his confirmed Chapter 13 plan.

Finally, the court finds that the result reached in *Ragsdale* is consistent with the holding of the Eleventh Circuit in its recent decision, *In re Hoggle*, 12 F.3d 1008 (11th Cir.1994). In *Hoggle* the court examined the rights of a debtor with respect to curing a default on his home mortgage pursuant to the provisions of 11 U.S.C. § 1322(b)(5). The case originated in the United States Bankruptcy court for the Northern District of Alabama, which had held that a confirmed Chapter 13 plan could be modified to allow the debtor to cure a post-confirmation default pursuant to Section 1322(b)(5),[4] with the post-confirmation arrearage to be paid under the modified plan. The Eleventh Circuit affirmed, observing that Section 1322(b)(5) provides for the curing of "any" default:

> ... any contrary interpretation of the statutory scheme would result in a rigid default rule under which a payment is tendered one day late would result in an immediate, incurable default. Such rigidity runs counter to Chapter 13's inherent flexibility and the Chapter's purpose to permit expanded use by homeowners.... Reading the statutory scheme to permit the cure of **any** defaults ... falls within the letter and spirit of the statutory scheme according the flexibility Congress

---

ing the options of the bankrupt debtor and protecting the health of the home mortgage industry.

The Bankruptcy Court reasoned that allowing a debtor to utilize Chapter 13 to cure the default on his mortgage, keep his home and eventually pay the debt he owed would not undermine the home mortgage industry in that "mortgage lenders are generally not interested in owning property but rather in collecting money." The Court expressly rejected the argument that debtors who had been given timely notice of the foreclosure sale were not entitled to further opportunities to reclaim their property, stating as follows:

> In an ideal world, all persons have complete knowledge of all their financial affairs and know at all times all steps creditors may be taking against them and the impact of those actions. In an ideal world, all persons are astute enough, and have the funds, to hire lawyers to negotiate for them when the situation is bleak. Also in an ideal world, there is no need for bankruptcy. In the real world, however, people come home to find their belongings repossessed, their doors barred, and judgments taken against them. Therefore, the fact that considerable notice has been provided does not necessarily justify a "cut-off" date that deprives individuals of certain rights that could otherwise be protected without unduly prejudicing the other party.

*See Ragsdale*, 155 B.R. at 584.

**4.** 11 U.S.C. Section 1322 provides, in pertinent part, as follows:

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under Section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

(b) Subject to subsections (a) and (c) of this section, the plan may—

\* \* \* \* \* \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

\* \* \* \* \* \*

**(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due....**

(Emphasis added.)

intended for homeowners in proposing and modifying their Chapter 13 plans.

12 F.3d at 1010 (emphasis added).

The court finds no merit in any of the allegations of error raised by the creditor in this case; the decision reached by the Bankruptcy Court is consistent with the reasoning set forth in *Ragsdale* and *Hoggle* and is due to be affirmed. A separate order in accordance with this memorandum of opinion will be entered.