**In re Odell COTTRELL, Debtor.**

**Odell COTTRELL, Plaintiff,**

**v.**

**The UNITED STATES of America for the United States Department of Agriculture, Rural Housing Service, f/k/a Farmers Home Administration, Defendant.**

**Bankruptcy No. 96–02043–RRS–13.
Adversary No. 96–00149–AP–RRS–13.**

United States Bankruptcy Court,
M.D. Alabama.

Nov. 13, 1996.

Thomas E. Haigh, Troy, AL and William Z. Messer, Montgomery, AL, Legal Services, for debtor.

Kent Brunson, Assistant U.S. Attorney, Montgomery AL, for U.S.A., Rural Housing Service.

Steven J. Youngpeter, Montgomery, AL, for Rural Housing Service.

Curtis C. Reding, Chapter 13 Trustee.

**380**

*STATEMENT OF THE CASE*

RODNEY R. STEELE, Chief Judge.

On Monday, October 7, 1996 the court called the above case for a hearing. At that time, the parties were offered an opportunity to present evidence and oral argument on the issue of whether there was a valid foreclosure sale[1] of plaintiff's residence. The foreclosure sale of the residence of Odell Cottrell was conducted by Rural Housing Service[2], (hereafter "RHS"), on May 9, 1996. Plaintiff filed Chapter 13 on May 10, 1996, one day after the foreclosure sale.

The sequence of events and issues according to the parties briefs, case file and hearing are as follows:

1. On April 30, 1984, RHS made a loan to Odell Cottrell in the amount of $30,500 to buy real property in Pike County, Alabama. The promissory note was re-amortized on April 30, 1988 in the amount of $29,752.32. RHS held a valid mortgage executed by the debtor on the real property, debtor's residence.

2. On October 18, 1995, the local RHS County Supervisor completed a report recommending foreclosure of the debtor's account. The report reflected that the debtor was approximately 6 months delinquent.

3. On October 20, 1995 RHS accelerated debtor's loan. RHS sent notice of the acceleration to debtor advising debtor of her rights, one of which was the right to request a hearing and appeal the decision of foreclosure.

4. On May 9, 1996 RHS conducted a foreclosure sale and sold the property to the highest bidder, U.S.D.A. Rural Development, for $20,400.00.

5. Thereafter on May 10, 1996, debtor filed this Chapter 13 proceeding.

6. On May 30, 1996 RHS filed a motion for relief from the automatic stay to permit eviction, stating that, the debtor's right to

cure the default ceased once the foreclosure sale occurred.[3]

7. Debtor, through her attorney, filed a response and a complaint directed to RHS's motion for relief from the automatic stay on June 19, 1996.

8. Plaintiff is now seeking to show that the foreclosure sale was invalid for the reasons enumerated in plaintiff's complaint: (1) violation of the automatic stay; (2) improper loan servicing assistance; (3) avoidable preference; (4) fraudulent conveyance; (5) improper notice of sale. Other questions were raised by counsel for plaintiff and will be considered within this court's opinion.

*CONCLUSIONS*

**1. Validity of Foreclosure**

■ Plaintiff asserts that although the foreclosure sale occurred on May 9, 1996, one day prior to Plaintiff filing Chapter 13, the sale was not complete until there was a proper memorandum of the sale. Plaintiff further states that such "memorandum of the sale" pursuant to Alabama Code § 8–9–3, is the Deed of Foreclosure which, in the instant proceeding was filed on May 17, 1996, seven days after the Plaintiff filed Chapter 13.

Alabama case law and the Bankruptcy Code provide that the court must decide that the foreclosure sale in question was complete on the day of the foreclosure sale, May 9, 1996. Therefore, automatic stay protection of the Bankruptcy Code is not applicable to the Plaintiff. See Title 11 U.S.C., §§ 362, 541 and cf. 11 U.S.C.A. § 1322(c)(1).

■ Under Alabama law, once the foreclosure occurs, the mortgagor's equitable right of redemption ends thereafter, all that remains is the mortgagor's one year statutory right of redemption from the date of the foreclosure sale[4]. The one year statutory right of redemption requires that the mortgagor make one lump-sum payment to cure the indebtedness. *In re Sims*, 185 B.R. 853 (Bankr.N.D.Ala., 1995).

---

1. Residence located at 3248 County Road 105, Troy, Alabama.

2. Formerly known as Farmer's Home Administration.

3. The statutory right of redemption is not in issue here.

4. The statutory right of redemption is not in issue here.

The court in *Sims,* considering the decision(s) in *In re Ragsdale,* 155 B.R. 578 (Bankr.N.D.Ala., 1993) and *In re McKinney,* 174 B.R. 330 (Bankr.S.D.Ala., 1994), applied the *Reform Act of 1994,* which overruled the *Ragsdale* decision, (*Sims* at 863), and codified the holding in *McKinney.* Section 301 of the 1994 Reform Act has created a "bright line" rule:

> ... [t]he Reform Act has, in effect, codified the holding of *In re McKinney* and those cases like it which adopt a "bright line" test to cut off the right to cure, rather than carefully protect and preserve the state law property rights of Chapter 13 debtors reflected in the *Ragsdale, [Commercial Federal Mortgage Corp. v.] Smith* [170 B.R. 708 (Bankr.N.D.Ala., 1994)], and *[Fleet Mortg. Corp. v.] Shaw* [171 B.R. 129 (Bankr.N.D.Ala., 1994)] decisions. These decisions are overruled by section 301 of the Reform Act. (*Sims* at page 863)

In *In re Smith* 85 F.3d 1555 (11th Cir., 1996), the court stated that:

> The court[5] then drew a bright-line date of the right to cure a default through a Chapter 13 plan as the **date of the sale** of the mortgaged property. We agree with the Sixth Circuit's selection of this termination date ... (emphasis added). *In re Smith* at 1559.

The court in *In re Smith* went on to state that:

> We must strike a balance between the rights of a debtor under the bankruptcy laws and the legitimate economic interest in encouraging lenders to invest in home mortgages. The line drawn by other circuits, and now by us in applying Alabama law, is at the foreclosure sale. *In re Smith* at 1560.

This is an unambiguous ruling from the Eleventh Circuit. Its holding is clearly the most equitable measure to employ for it takes into consideration the position of the debtor as well as that of the creditor. A foreclosure sale proceeding does not occur overnight. Where the procedures for a valid foreclosure sale are met, the debtor has ample time prior to the sale in which to file bankruptcy. Where it is clear that foreclosure was imminent and that proper notice of the foreclosure was given and steps to appeal the decision of foreclosure were made aware to the debtor, the date of the foreclosure sale should be the cut-off date to cure default.

This holding reflects the final settlement of a question that has long plagued the bankruptcy courts: When is debtor's equity of redemption right cut off?

Debtor-plaintiff further asserts that there was not a proper memorandum made of the sale and therefore the sale was not complete when bankruptcy was filed. This court is inclined to differ. Alabama Code section 8–9–3 states:

> When lands, tenements, or hereditaments are sold or leased at public auction and the auctioneer, his clerk or agent makes a memorandum of the property and the price thereof at which it is sold or leased, the terms of sale, the name of the person on whose account the sale or lease is made, such memorandum is a note of the contract within the meaning of Section 8–9–2.

The court was provided, at hearing, with a copy of RHS's "running record." (Defendant's exhibit # 10). This "running record" shows the notation made at the time of the foreclosure sale by Mr. McDougald on behalf of RHS. This notation included the sale price, the time and place of the sale, sale price and the name of the buyer. A valid and proper memorandum of the sale was made pursuant to Alabama Code section 8–9–3.[6]

## 2. Loan Servicing

Testimony given during the hearing on October 7, 1996 covered, in part, the issue of

---

**5.** "The court" refers to the Sixth Circuit case *In re Glenn,* 760 F.2d 1428 (6th.Cir., 1985).

**6.** Also see *Wildman v. Means,* 208 Ala. 487, 94 So. 823 (1922); held foreclosure sale valid without a writing. *Garrison v. Dickerson,* 631 So.2d 255 (Ala.Civ.App.1993); considering the period of redemption, held that Ala.Code section 6–5–247 defines "sale" as "foreclosure sale." Fore-closure is not complete when the foreclosure deed is filed, but on the day of the foreclosure sale. Section 8–9–3 is not applicable in this case since it involves the rights of vendor and purchaser. The debtor was neither, and was not a party to the sale. See e.g. *Lewis v. Wells,* 50 Ala. 198 (1874).

loan servicing. Further, counsel for plaintiff raises the issue of loan servicing as claim number two in the complaint.

■ The court, taking into consideration testimony and the parties briefs, finds that there was no improper loan servicing that would render the foreclosure invalid.

The present Chapter 13 case is debtor's third case. Debtor's first Chapter 13 was filed on May 18, 1990. Debtor's second Chapter 13 was filed on February 6, 1992 and the third, the present case, was filed on May 10, 1996. During all of the above periods, debtor was represented by capable counsel and the reason for the filing was the same: To thwart RHS efforts to foreclose or collect on its mortgage. Further, debtor's majority children were designated to receive debtor's mail. Testimony revealed that RHS would send two copies of all correspondence, one to debtor and one to the child of debtor designated to receive the mail.

Counsel for plaintiff also states that debtor was unduly denied a moratorium. But testimony establishes that debtor did not complete all the steps necessary to receive a moratorium. Specifically, debtor failed to provide proof necessary to show a reduction in household income. A reduction in household income is a circumstance upon which RHS should advise of a moratorium and provide an application. However, this information must be supplied to RHS by the debtor in order for the agency to respond appropriately.

Again, at all times pertinent, debtor was either accompanied by a majority aged child and/or represented by counsel, although counsel was not present at these meetings with RHS.

According to the "Report on Real Estate Problem Case", (Plaintiff's Exhibit # 4), Plaintiff was granted two moratoria, in 1986. And from December 22, 1994 to September 28, 1995, ten letters advising debtor of an interest credit and moratoria were mailed to the debtor. Debtor responded to three of the letters.

It is the determination of this court that the debtor was not prejudiced [7] in any way by RHS handling of moratorium rights or appeal rights.

### 3. Notice Procedures for Foreclosure Sale

■ Plaintiff asserts that proper notice of the sale of foreclosure was not made. Specifically, plaintiff states that, pursuant to Alabama Code section 35–10–2 for mortgages executed prior to December 31, 1988, four consecutive weeks notice in a newspaper published in the county where the land is located is required.

In the present case, RHS gave three consecutive weeks notice of the sale in the newspaper *The Messenger.* While it is true that Alabama Code section 35–10–2 applies to the notice requirement of this case due to the fact that the mortgage was executed on April 30, 1984, that is the extent to which this statute is applicable here.

Alabama Code section 35–10–2, in the relevant portion, states:

> If a deed of trust or mortgage, with power of sale, is silent as to the place or terms of the sale, or as to the character or mode of notice, . . .

The mortgage in this case was not silent as to the "character or mode of notice." Specifically, paragraph 23 of the covenant section of the mortgage states:

> . . . [T]he Government and its assigns may take possession of the property and foreclose this mortgage by sale to the highest bidder, for cash, at the courthouse door of any county in which all or a part of the property is situated, after advertising the time place and terms of sale once a week **for three consecutive weeks** in a newspaper of general circulation in each county in which a portion of the property is situated.(exhibit B to the Government's relief from stay motion).(emphasis added)

---

7. Debtor having received two previous moratoriums knew the procedures necessary to receive one. No evidence was given, and the court finds none, that those procedures had changed, unbeknownst to debtor and to her detriment.

Pursuant to the above paragraph, which appears in the mortgage, section 35–10–2 of the Alabama Code is inapplicable here.

### 4. Avoidable Preference and Fraudulent Conveyance

As to the issue of the foreclosure sale constituting an avoidable preference under 11 U.S.C. § 547 or a fraudulent conveyance under 11 U.S.C. § 548, the court finds that the case of *BFP v. Resolution Trust Corporation,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), is equally applicable to both kinds of avoiding powers:

> [a] fair and proper price, or a "reasonably equivalent value," for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with. *BFP* [511 U.S. at 542–544, 114 S.Ct.] at 1764.
>
> ----------------------------------
>
> Market value cannot be the criterion of equivalence in the foreclosure sale context. The language of § 548(a)(2)(A) ("received less than a reasonably equivalent value in exchange") requires judicial inquiry into whether the foreclosed property was sold for a price that approximated its worth at the time of the sale. An appraiser's reconstruction of "fair market value" could show what similar property would be worth if it did not have to be sold within the time and manner strictures of state prescribed foreclosure. But property that *must* be sold within those strictures is simply *worth less.* No one would pay as much to own such property as he would pay to own real estate that could be sold at leisure and pursuant to normal marketing techniques. *BFP* [511 U.S. at 536–38, 114 S.Ct.] at 1761.

 In a voidable preference, the court must find as one element that the creditor has gotten more in a pre-petition transfer, than he would have gotten in a Chapter 7 if the transfer had not occurred. In this case the value at foreclosure by RHS establishes the "forced sale" price, a price which would undoubtedly be duplicated by a trustee in a "forced sale" in bankruptcy. RHS has thus not gotten much more in a Chapter 13. But if the property were to sell in Chapter 7 for $31,500 RHS would get at least $28,000, the amount of its secured debt. Debtor would get the balance, $3,500 as a homestead exemption[8], and unsecureds would get nothing. Trustee would thus not try to liquidate in a Chapter 7, and RHS would ultimately foreclose, with the same outcome faced in this case.

 The requirements for a valid foreclosure under bankruptcy and applicable non-bankruptcy law have been complied with. The amount received at the foreclosure sale is the "reasonably equivalent value" of the residence.

The court concludes that the foreclosure of the residence of plaintiff, Odell Cottrell, on May 9, 1996 was valid.

---

8. This is without taking into account the second mortgage on this property to Remodeler's National Funding, which would have to be satisfied by the trustee before the debtor could receive anything. See § 522(f)(2) of Title 11 U.S.C.