**In re CRIME FREE, INC.**

**Bankruptcy No. 96–40109 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

March 5, 1996.

Charles A. Brown, Little Rock, AR, for Joe C. Reynolds, Oley E. Rooker and Meredith L. Rooker.

Glenn Kelley, Little Rock, AR, for Crime Free, Inc., Debtor.

### ORDER GRANTING RELIEF FROM STAY

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the Motion for Relief from Stay, filed by the creditors Joe C. Reynolds, Oley E. Rooker and Meredith L. Rooker, on January 25, 1996. The matter was called for hearing on February 22, 1996, at which time the parties presented oral stipulations of fact and argument on the threshold legal issue. Although the debtor is in possession of the property, it possesses no other property rights in the property such that relief from stay will be granted.

The following facts are stipulated by the parties. The debtor entered into a real estate installment note and a mortgage agreement in August 1994, under which the debtor waived all right of redemption under Arkansas law. Payments not being timely made, on November 7, 1995, the creditors filed a complaint of foreclosure which proceeded to judgment, a Decree of Foreclosure being entered on December 14, 1995. The Decree provided that

> If the judgment is not discharged within ten (10) days from this date, the Clerk of this Court ... shall sell the real property at the main entrance of the Pulaski County Courthouse in Little Rock, Arkansas, at public auction to the highest bidder.

Sale of the property was held on January 11, 1996, at 12:00 p.m. at which time the creditors purchased the property. A Report of Sale and Commissioner's Deed were immediately delivered to the commissioner, but were not signed prior to the time of notice of the bankruptcy. The debtor filed this Chapter 11 case on January 11, 1996, at 12:53 p.m.

The creditors assert that the real property is no longer property of the estate since the Decree of Foreclosure provided for the sale, and the property was in fact sold prior to the time the bankruptcy petition was filed with the clerk. The debtor asserts that since there was no confirmation of the sale, it retains an interest in the real property such that it may propose in a plan of reorganization to cure the arrearage, continue to make regular payments, and keep the property. Inasmuch as any right the debtor may have had to cure the default, 11 U.S.C. § 1123(a)(5)(G), ceased to exist upon the sale of the property and expiration of state-law redemption rights,[1] and there being no way to provide adequate protection of the secured creditor's collateral (now merged), relief from stay will be granted.

▮▮▮▮ The filing of a bankruptcy does not afford the debtor an interest in the property beyond that provided for by contract between the parties, state law, or those specifically provided for by federal law:

Section 541 provides a system for dealing with the debtor's interests in property and his debts. However ... the Code [does not] provide any rules for determining whether the debtor has an interest in property, or whether he owes a debt. Determination of these issues, therefore, requires resort to non-bankruptcy law.

L. King, et al., Collier on Bankruptcy, ¶ 541.07[1] at 541–30 (15th ed.1995). Thus, even though the debtor is in possession of property, section 541 will not affect various statutory provisions that give a creditor rights that are valid outside as well as inside bankruptcy. The debtor-in-possession (and the estate) merely inure to whatever rights the debtor would have outside of bankruptcy. Clearly, an equity of redemption comes within the scope of "all legal or equitable interests of the debtor in property" and, as such, becomes property of the estate. 11 U.S.C. § 541(a)(1). The statutory right to redemption, if it still exists at the time the bankruptcy petition is filed, becomes property of the estate.

One of the primary concerns of Congress in enacting provisions and amendments to the Bankruptcy Code was to protect the ability of individuals to maintain their personal residences. In an effort to ensure that individuals be able to continue living in their homes, Chapter 12 and 13 provide for "cure" of a "default" of the debt of debtor's principal residence. 11 U.S.C. §§ 1322(b)(5), 1222(b)(5). Chapter 11 assumes a similar right by providing that the plan may "provide adequate means for the plan's implementation such as—curing or waiving of any default." 11 U.S.C. § 1123(a)(5)(G). Until passage of the Bankruptcy Reform Act of 1994, there was a split in the circuits as to whether, in a Chapter 13 case, a cure could take place after entry of a decree of foreclosure. In the Third Circuit, the debtor's right to cure ceased upon entry of the judgment of foreclosure. *In re Roach*, 824 F.2d 1370, 1378 (3d Cir.1987). The Third Circuit extended this rule to the Chapter 11 context in *In re DeSeno*, 17 F.3d 642 (3d Cir.1994). In other circuits, the right to cure continued

---

1. Here, the only redemption rights existing were the ten days to pay the judgment because the debtor contractually waived its state redemption rights.

until the time of the foreclosure sale. *See Justice v. Valley National Bank*, 849 F.2d 1078 (8th Cir.1988) (Chapter 12); *In re Glenn*, 760 F.2d 1428 (6th Cir.1985) (Chapter 11), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *Matter of Clark*, 738 F.2d 869 (7th Cir.1984) (Chapter 13), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). In *In re Gordon*, 161 B.R. 459 (Bankr.E.D.Ark.1993), this Court applied the analysis of *Justice* in the Chapter 13 context on the basis that the Code provisions in Chapters 12 and 13 were similar with regard to cure of defaults. In *Gordon*, like *Justice*, the right to redeem the property under state law was waived and the time to pay the foreclosure judgment per the order of the state court expired without action by the debtors. Indeed, in *Gordon*, the sale had taken place and all documents signed and thus the sale was clearly final prior to the time the bankruptcy case was filed.

The Bankruptcy Reform Act of 1994 clarified to what point, only in Chapter 13 cases, a debtor may cure a default in a residential mortgage. New Code section 1322(c) provides that cure may take place "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." This amendment did not change the rule in most circuits, including the Eighth Circuit, but had the effect of overruling *Roach* in the Third Circuit. Thus, in Arkansas, a debtor's right to cure a default of a mortgage until the time of "sale" remained the same before and after passage of the Bankruptcy Reform Act of 1994.

 The issue of when a sale is sufficiently consummated to obviate any debtor interest in the property, however, remains an important one. Again, determination of this issue is made under state law. *In re Ross*, 191 B.R. 615 (Bankr.D.N.J.1996) ("We accept the latter construction, i.e., that a 'final' sale, as determined by applicable state law, controls as the termination point for the right to cure default under § 1322(c)(1)."). *See Justice v. Valley National Bank*, 849 F.2d 1078 (8th Cir.1988). As a general rule, under Arkansas law, a sale of property is not com-plete until confirmation of the sale by the Chancery Court. *Fleming v. Southland Life Ins. Co.*, 263 Ark. 272, 564 S.W.2d 216 (1978). While this broad statement would appear to preclude creditor's argument, the analysis and holding of *Fleming* indicate that the rule is not so clear. This generalization, that sale is not final until confirmation, is based upon the expiration of the right of redemption. Once the right of redemption ceases, usually occurring upon confirmation of the sale, the debtor has no further rights in the property. Indeed, after the contract has merged into the judgment, and prior to the sale, the identifiable interests of the debtor are merely the statutory and equitable rights of redemption. *See Tim Wargo & Sons v. Equitable Life Assurance Society*, 34 Ark.App. 216, 809 S.W.2d 375 (1991). Further, those rights are generally extinguished by the foreclosure decree and sale. *Id.*, 809 S.W.2d at 377. The right to redemption may be waived by the mortgage or may be extended by the chancellor by allowing a reasonable time for the mortgagor to pay the judgment and redeem the property. Both situations exist in this case. Once that time period expires, however, the debtor is without interest in the property.[2] *Id.* ("[T]he limitation contained in the decree of foreclosure is determinative when assessing the time allowed for redemption."). *Fleming* further explained the legal effect of particular language in foreclosure decrees. Where, as here, the decree provides for satisfaction of the judgment within a particular time period, *i.e.*, a specific time in which to redeem the property, and sale thereafter, the possibility of redemption is foreclosed after the expiration of that time period and upon the sale. However, if the decree were to provide that title was foreclosed upon sale and confirmation, the sale is not final until confirmation. *Fleming*, 564 S.W.2d at 218.

In *Gordon*, the determination of whether the real estate was property of the estate was a simple one because the sale had in fact been confirmed. Accordingly, the sale was indisputably final, obviating any interest of the debtor in the property. *Justice*, 849 F.2d

---

**2.** The only remedy appears to be a timely motion to set aside the decree on the basis of inadequate notice or fraud. Neither allegation has been raised in this case.

1078, is similar to the instant case although in *Justice,* the right of redemption had not expired prior to the time of filing of the bankruptcy. In *Justice* the Eighth Circuit did not permit the debtor to cure because the sale had occurred prior to the filing of the bankruptcy, even though the right of redemption had not expired at the time the bankruptcy case was filed. In *Justice,* like the instant case, the debtor had only those rights afforded by state law—in *Justice,* the right to redeem the property by a date certain. The Bankruptcy Code provision regarding waiver of default and cure did not resurrect the underlying contract or extend the right of redemption.

Finally, *In re Stanley,* 182 B.R. 241 (Bankr.W.D.Ark.1994) presented the situation, described in *Fleming* and existing here, in which the final decree required that redemption occur by a date and foreclosed redemption rights thereafter.[3] Once those redemption rights expired, the debtor had no further equitable or legal interest in the property. In the instant case, since the debtor failed to redeem the property prior to the time of sale, and the sale occurred, state law terminated the debtor's equitable and legal interest in the property, prior to the time the bankruptcy case was filed. When the bankruptcy case was filed, less than one hour later, the debtor at most had only a possessory interest and the rights given to that possessory interest under state law.

■ Although the debtor is still physically in possession of the property, the estate cannot hold a greater interest than that held by the debtor. *N.S. Garrott & Sons v. Union Planters National Bank (In re N.S. Garrott & Sons),* 772 F.2d 462, 466 (8th Cir.1985). Mere possession of real property, whether under applicable bankruptcy or nonbankruptcy law, cannot be converted into any sort of permanent retention absent consent of the owner. Here, the mortgagee, under Arkansas law, has title to the real property which passed when the debtor gave the mortgage to the creditor. *See Bank of Oak Grove v. Wilmot State Bank,* 279 Ark. 107, 648 S.W.2d 802, 803 (1983). The contract between the

parties contemplated possession of the property by the debtor during the time the debtor agreed to pay back its loan. Ultimately, the debtor would regain title to the property at the successful completion of the parties' contract. Failing that completion, and upon default, the debtor contractually agreed to waive its right of redemption. Here, the default did occur, a foreclosure ensued, and judgment entered. The state court chancellor, in entering judgment for the creditor, also provided that the debtor would have ten days to redeem the judgment after which the right to redeem the property terminated. In this case, that redemption passed some two weeks prior to the filing of the bankruptcy. A sale took place less than an hour before the debtor filed its Chapter 11 case. It is true that the final sale documents were not signed prior to the filing. However, since Arkansas law provides that the debtor had no further non-possessory interest in the property, the debtor cannot now attempt, under federal Bankruptcy law, to recreate its equitable interest in the real property. While it has a possessory interest in the property, its interest is confined to the rights attached the that possessory interest, which often amounts to no more than the right to litigate eviction proceedings.

Whether the debtor retains any interest in the property, *i.e.,* whether it is property of the estate, is determined by state law. In the instant case, like *Fleming* and *Stanley,* the debtor's right to redeem the property expired without action by the debtor such that the debtor had no further legal rights in the property, but merely a possessory interest. In the bankruptcy context, this means that the estate had nothing more than the possessory interest when the Chapter 11 petition was filed. Under the circumstances, debtor's offers of adequate protection are inapplicable. Restructure of this debt, absent consent, is impossible in the Chapter 11 context. Accordingly, it is appropriate to afford relief from stay for the creditors to pursue their state-law remedies to remove debtor from possession.

---

3. *In re Mueller,* 18 B.R. 851 (Bankr.W.D.Ark. 1982), cited by the debtor is inapplicable because the bankruptcy petition was filed before the sale was held.

**ORDERED:** that the Motion for Relief from Stay, filed on January 25, 1996, is GRANTED.

**IT IS SO ORDERED.**