**In re Donald and Ruby BLAND.**

**Bankruptcy No. 97–41589 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Sept. 2, 1998.

**164**

Steven D. Durand, Little Rock, AR, for Plaintiff or Petitioner.

Grace Ann Weber, Little Rock, AR, for Defendant or Respondent.

### ORDER GRANTING RELIEF FROM STAY

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon a Motion for Relief from Stay and/or Motion to Validate Foreclosure Sale, filed on June 15, 1998, by Harbourton Mortgage Company ("Harbourton"). This case presents the issue of when a nonjudicial foreclosure sale is final for purposes of the Bankruptcy Code.

On March 31, 1998, at 11:00 a.m., the mortgagee of the debtors' real property, Harbourton Mortgage Company, held a nonjudicial foreclosure sale pursuant to Ark.Code Ann. § 18–50–101 *et seq.* The bid of Carl Hunt was accepted at 11:06 a.m. and at 11:53 a.m. this bankruptcy case was filed.[1] After Hunt's bid was accepted, he did not immediately tender funds in the amount of his bid. Not having cash on his person, he immediately got into his car and drove to his bank to obtain a cashier's check. His testimony was uncontroverted that he had sufficient funds available to pay on the bid and that he was ready, willing and able to immediately tender the funds.

While in transit to his bank, he passed by the property he had just purchased. Seeing someone on the premises, he stopped. A person identifying himself as the debtor advised Hunt that he had already filed bankruptcy. This conversation occurred at 11:30, approximately 20 minutes before the bankruptcy was actually filed. Knowing that the automatic stay, 11 U.S.C. § 362, is imposed upon the filing of a title 11 case, Hunt halted all action. Hunt still has the funds and is "fully, ready and able to deliver at any time." But for the debtor's statement that he had filed a bankruptcy case, Hunt would have retrieved the funds and tendered them to the auctioneer.

Harbourton contends that pursuant to Arkansas law, the sale was final when the highest bid was accepted such that the real property is not property of the estate. Based upon the finality of the sale, Harbourton seeks an order determining that the sale was valid and granting permission for it to complete its state law remedy by accepting payment for the property and issuing a deed to Hunt. The debtors contend, however, that since no funds were tendered and no deed issued, that the property remains in the estate and is subject to reorganization in this chapter 11 case.[2]

---

1. Inexplicably, there are two file stamps on the petition, one marked as filed at 11:53, the second marked as filed at 12:03. Since both occurred after the "fall of the hammer" at the foreclosure sale, the fact that two different times are stamped on the petition is not material to the determination.

2. The Court is also in receipt of a letter from a corporate entity, Rainey Realty, Inc. stating its

Arkansas law provides for both judicial and nonjudicial sales of property. In a judicial sale, the court orders a sale and thereafter confirms the sale. In this situation, the court has discretion and authority to refuse to accept an offer, may extend the redemption period, or impose other conditions upon a sale. *See, e.g., In re Crime Free, Inc.,* 196 B.R. 116 (Bankr.E.D.Ark. 1996), *appeal dismissed,* No. 97–40109 (E.D.Ark. Aug. 8, 1996)(describing state court order permitting debtor to pay foreclosure judgment prior to sale). Where a judicial sale is involved, sale may not be final until expiration of the debtor's redemption rights, *i.e.,* usually evidenced by the order confirming the sale. *See id.*

In sales under the nonjudicial foreclosure statute, however, the procedure is different and different rules and policies apply. *See generally Coulter v. Blieden (In re Morgan's Estate),* 104 F.2d 29, 33 (8th Cir.), *cert. denied,* 308 U.S. 583, 60 S.Ct. 106, 84 L.Ed. 488 (1939)(contrasting judicial and nonjudicial sales). The Arkansas Code provides in relevant part:

> (a) A sale made by a mortgagee...shall foreclose and terminate all interest in the trust property of all persons to whom notice is given under § 18–50–104...* * *
>
> (b) A sale shall terminate all rights of redemption, and no person shall have a right to redeem the trust property after a sale.* * *

Ark.Code Ann. § 18–50–108(a), (b) (Mitchie Supp.1997). Thus, once a sale is complete, the debtors' redemption rights cease, and sale is final for purposes of the Bankruptcy Code. Once the sale is final, the debtors has no further rights in the property, and it may not be included in debtor's reorganization case. *See In re Crime Free,* 196 B.R. 116 (Bankr.E.D.Ark.1996)(any right the debtor had to cure the default, 11 U.S.C. § 1123(a)(5)(G), ceased to exist upon the sale of the property and expiration of state-law redemption rights).

The primary issue in this case is at what point a nonjudicial foreclosure sale is concluded under Arkansas law. Arkansas Code section 18–50–107 governs the conduct of a nonjudicial sale, including specifications of the time of day sale may be held, notice to be had, and who may appear at the sale. Section 18–50–107 provides that, "The purchaser shall pay at the time of sale the price bid, and, within ten (10) days thereafter, the mortgagee or trustee shall execute and deliver the trustee's deed to the purchaser...." The question thus becomes whether Hunt was required, at the moment of the acceptance of the bid, to immediately and physically tender the funds for the bid, or whether it was reasonable for him to have the opportunity to immediately drive to his bank and return with the funds.

As a general rule, under Arkansas law, in execution sales, a sale of property is complete upon the fall of the hammer at auction, *Collins v. Heitman,* 225 Ark. 666, 284 S.W.2d 628 (1955)(construing Ark. Stat. 86–1421(2). *Cf. Coulter v. Blieden (In re Morgan's Estate),* 104 F.2d 29, 33 (8th Cir.), *cert. denied,* 308 U.S. 583, 60 S.Ct. 106, 84 L.Ed. 488 (1939), and the funds for the bid tendered, *State v. Lawson,* 14 Ark. 114 (1853). While buyers tendering bid money need hold themselves available to pay the funds and a mere willingness is insufficient, *Ex parte State and State Bank,* 15 Ark. 263, 267 (1854), the tender may be made within a reasonable time on the day of the sale:

> The allegation that the sheriff knew that the State and the bank had money, and were ready and willing to pay the bid, when applied to, is no sufficient excuse for not paying or *offering to pay, within reasonable hours, on the day of sale.*

*Id.* (emphasis added). *Cf. In re Engles,* 193 B.R. 23 (Bankr.S.D.Cal.1996)(under California law, sale was final upon acceptance of the last and highest bid, despite the fact that perfection—transmission of the deed and

---

position. This letter is an improper *ex parte* communication, filed by a non-lawyer on behalf of a corporate entity, *see Ackra Direct Marketing Corp. v. Fingerhut Corp.,* 86 F.3d 852 (8th Cir.

1996) (corporations must be represented by counsel in order to appear in federal court), and will be stricken from the record.

other statutory requirements—did not take place prior to the filing of the title 11 case).[3]

■ In the instant case, the mortgagee accepted the bid of Hunt rendering the sale final. Hunt was not only willing to pay, but offered to pay, and took action to pay. He was precluded from paying only by the misrepresentation[4] of the debtor that a bankruptcy case had in fact been filed. Hunt responded in accord with his obligation under the Bankruptcy Code by halting all further action with regard to the property. Since section 362 requires that any person or entity halt action against the debtor or estate upon notice of the bankruptcy, even informal or oral notice, *In re Stewart*, 190 B.R. 846, 849 (Bankr.C.D.Ill.1996), and the courts have shown little sympathy toward persons or entities who violate the stay, *see, e.g., Shadduck v. Rodolakis*, 221 B.R. 573 (D.Mass.1998); *In re Dencklau*, 158 B.R. 796 (Bankr.N.D.Iowa 1993)(sanctioning sheriff in collecting garnishment), Hunt cannot be faulted for not physically tendering funds to the mortgagee when he was given oral notice of a bankruptcy case. Indeed, Hunt acted appropriately, telephoning the mortgagee to inquire as to the bankruptcy and halting further action. The fact that the bankruptcy petition had not in fact been filed with the bankruptcy clerk does not obviate his offer and efforts to pay the bid on the sale of property.

■ Under Arkansas law, the sale of real property is final upon the acceptance of the highest bid when the bidder is ready, able, and in fact offering to tender the funds to the mortgagee. The bidder in this case was able and in fact attempted to tender the funds within the hour of the sale. Since the elements necessary for a final execution sale exist—acceptance of the highest and last bid, and the immediate offer to pay—the sale is final under Arkansas law. The debtors' redemption rights expired at 11:06 a.m., and they have no interest in this property to

reorganize in the chapter 11 case. 11 U.S.C. §§ 541(a); 1123(a)(5)(G). Accordingly, it is

**ORDERED** that the Motion for Relief from Stay and/or Motion to Validate Foreclosure Sale, filed on June 15, 1998, by Harbourton Mortgage Company, is Granted. It is

**FURTHER ORDERED** that the letter to the Court, dated August 18, 1998, is stricken from the record.

**IT IS SO ORDERED.**

---

3. As discussed above, Arkansas law, like California law, provides that sale is final upon acceptance of the last and highest bid. A different analysis was applied in *In re Johnson*, 215 B.R. 988 (Bankr.W.D.Tenn.1997), because Tennessee law required an exchange of consideration before a sale is final.

4. The Court does not necessarily conclude that the misrepresentation was made with the intent to deceive. That is, the debtor may have reasonably believed that his case had been filed and therefore stated the filing as a fact.