**In re James M. TOMLIN, Debtor.**

**Bankruptcy No. 98–41988M.**

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

Jan. 25, 1999.

Stephen Bennett, Sherwood, AR, for Debtor.

Daniel Parker, Little Rock, AR, for Hibernia National Bank.

David D. Coop, North Little Rock, AR, Trustee.

## ORDER

JAMES G. MIXON, Chief Judge.

The matter before the Court is an objection to confirmation of a chapter 13 plan and a motion for relief from the automatic stay filed by Hibernia National Bank ("Hibernia"). Hibernia challenges the Debtor's chapter 13 plan to cure an arrearage and resume payments on his home mortgage debt pursuant to 11 U.S.C. § 1322(c)(1) after the home has been sold at a foreclosure auction, but before the recording of the trustee's deed as required by statute. After a hearing, the Court took the matter under advisement.

This is a core proceeding pursuant to 28 U.S.C. § 157(G) and (L), and the Court has jurisdiction to enter a final judgment in this case.

## FACTS

Hibernia is a holder of a first mortgage on the Debtor's principal residence located in Sherwood, Arkansas. The mortgage secures a promissory note executed by the Debtor and held by Hibernia. The Debtor defaulted under the terms of the note and mortgage when he failed to make the required monthly payments.

In January 1998, Hibernia initiated statutory foreclosure pursuant to Arkansas law. Hibernia filed and properly served the Debtor with a mortgagee's notice of default and intention to sell the property, which the Debtor acknowledged receiving. The notice set the foreclosure auction of the property for April 21, 1998, at 11:00 a.m.

On April 21, 1998, at 11:00 a.m., Johnny Weaver, an employee of Wilson and Associates, Attorneys at Law, conducted an auction of the subject property. Weaver testified that there were four bidders at the sale and bidding started at approximately $16,000.00. GGF, Inc. entered the final bid of $35,000.00, which was accepted, and a cashier's check for $35,000.00 was tendered to Wilson and Associates at 11:50 a.m. before Weaver returned to his office.

Also on April 21, 1998, at 3:41 p.m., the Debtor filed his petition for bankruptcy relief under the provisions of chapter 13. At the time the petition was filed, the affidavit of sale had not been prepared and filed, nor was a trustee's deed delivered and recorded as required by state statute.

The Debtor's plan filed May 6, 1998, proposes to pay the regular monthly mortgage payment of $268.49 and to cure the arrearage owed to Hibernia with a monthly payment of $125.00 pursuant to 11 U.S.C. § 1322(b)(3) and (5) of the Bankruptcy Code.

Hibernia requested relief from the automatic stay and objected to confirmation, arguing that the Debtor is not entitled to employ 11 U.S.C. § 1322(b)(3) and (5) to cure the default because under 11 U.S.C. § 1322(c)(1), a default may not be cured after "such residence is sold at a foreclosure sale ... conducted in accordance with applicable non-bankruptcy law...." Hibernia contends that a non-judicial foreclosure sale is final under Arkansas law when the auction is concluded, and thus the Debtor may not cure his default through his plan.

The Debtor argues that under Arkansas law, a non-judicial sale is not final until the mortgagee's deed and the affidavit of sale are filed of record as required by Ark.Code Ann. §§ 18–50–107(e), 110, 111 (Michie Supp. 1997).[1]

## DISCUSSION

The Bankruptcy Code provides in relevant part as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may——

. . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . .

(3) provide for the curing or waiving of any default . . .

(5) provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any secured claim on which the last payment is due after the date on which the final payment under the plan is due;

. . .

(c) Notwithstanding subsection (b)(2) and applicable non-bankruptcy law——

(1) a default with respect to, or that gave rise to, a lien on a debtor's principal residence may be cured under paragraphs (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable non-bankruptcy law . . .

11 U.S.C. §§ 1322(b)(2),(3),(5) & (c)(1)(1994).

Prior to 1994, courts were divided as to the precise point in a foreclosure process when the debtor loses his right to cure a default and reinstate a mortgage in a chapter 13 case. Many courts had concluded that the right to cure continued until the foreclosure

sale process had become final. *See, e.g., Federal Land Bank v. Glenn (In re Glenn),* 760 F.2d 1428, 1435 (6th Cir.1985), *cert. denied sub nom., Miller v. First Fed.,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *In re Clark,* 738 F.2d 869, 870 (7th Cir.1984). However, the point in the foreclosure process when the sale was deemed final varied from state to state. *See, e.g., Ferrell v. Southern Fin.,* 179 B.R. 530, 532 (W.D.Tenn.1994) (sale final at conclusion of auction); *In re Ragsdale,* 155 B.R. 578, 587 (Bankr.N.D.Ala.1993) (sale final at expiration of redemption period); *In re Gordon,* 161 B.R. 459, 462 (Bankr. E.D.Ark.1993) (confirmation completes judicial sale).

In 1987, the Court of Appeals for the Third Circuit held that the entry of the foreclosure judgment, not the conclusion of the sale, severed a debtor's right to cure a delinquent note secured by a mortgage in the debtor's personal residence. *In re Roach,* 824 F.2d 1370 (3rd Cir.1987). In response to the decision in *In re Roach,* Congress enacted, as part of the Bankruptcy Reform Act of 1994, section 1322(c)(1), which states that a debtor may cure and reinstate a home mortgage until the property is sold in a foreclosure sale.

This attempt by Congress to clarify when the debtor loses his right to cure a defaulted mortgage has been unsuccessful. Some courts have declared that the language of U.S.C. § 1322(c)(1) is clear and unambiguous. These courts have followed the bright-line approach that the cure provisions of 11 U.S.C. § 1322 are only available prior to the date of the foreclosure auction. *See, e.g., McCarn v. WyHy Fed. Credit Union (In re McCarn),* 218 B.R. 154, 161 (10th Cir. BAP 1998); *Cottrell v. United States (In re Cottrell),* 213 B.R. 378, 381 (Bankr.M.D.Ala.1996) (quoting *In re Smith,* 85 F.3d 1555 (11th Cir.1996)); *In re Ziyambe,* 200 B.R. 790, 794 (Bankr.D.N.J.1996); *In re Sims,* 185 B.R. 853, 865–66 (Bankr.N.D.Ala.1995).

---

**1.** The Debtor also argued at trial that notice was improper because the mortgagee was listed as Charter Mortgage and Investments, Inc. in the notice by newspaper while the letter accompanying the notice of default and intention to sell property, which was mailed to the Debtor, referred to Hibernia as mortgagee. This argument

lacks merit. Charter, apparently the original mortgagee, was listed as such in the notice by newspaper and the notice of default and intention to sell property. Thus both notices are consistent and conform to the statute requiring a listing of the names of the parties to the mortgage.

Other courts have found the language of 11 U.S.C. § 1322(c)(1) ambiguous and have resorted to an analysis of legislative history to resolve the ambiguity. These courts generally favor a more liberal statutory interpretation that a debtor's right to cure is severed at the point when the foreclosure sale, as distinguished from the auction, has been completed under state law. *See, e.g., Christian v. Citibank,* 214 B.R. 352, 355 (N.D.Ill.1997); *In re Downing,* 212 B.R. 459, 461 (Bankr.D.N.J. 1997); *In re Ross,* 191 B.R. 615, 618 (Bankr. D.N.J.1996); *In re Barham,* 193 B.R. 229, 231–32 (Bankr.E.D.N.C.1996); *In re Reid,* 200 B.R. 265 (Bankr.S.D.Fla.1996) (quoting *In re Jaar,* 186 B.R. 148 (Bankr.M.D.Fla. 1995)); *In re Blair,* 196 B.R. 477, 479–80 (Bankr.E.D.Ark.1996); *In re Ross,* 191 B.R. 615, 618 (Bankr.D.N.J.1996); *In re Jaar,* 186 B.R. 148, 151–54 (Bankr.M.D.Fla.1995).

■ The more persuasive of these two competing interpretations is that the statutory language "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law" is ambiguous. The term "foreclosure sale" could refer either to the foreclosure process under state law, which is conducted in numerous stages, or to the foreclosure auction. If Congress had intended to sever a debtor's ability to cure a delinquent mortgage on the date of the auction, which is typically only one step in the foreclosure sale process, it could have easily done so. One leading commentator has found significance in the fact that the statute does not pinpoint a specific event as a cut-off point of the debtor's cure rights. 8 Collier on Bankruptcy ¶ 1322.15 (Lawrence P. King et al. eds.

15th ed. rev. 1998) ("It may well be significant that Congress did not say that a debtor may cure 'until the sale,' or 'until the date of the foreclosure sale,' indicating that completion of the sale might be on a later date than the date of the auction").

Courts routinely examine legislative history when resolving statutory ambiguity. But as the court in *In re McCarn* accurately observed, portions of the legislative history of section 1322(c)(1) are contradictory and seem "to advocate components of both approaches employed by courts prior to the passage of 11 U.S.C. § 1322(c)(1) …."[2] 218 B.R. at 154, 161 n. 5.

Support for the more liberal interpretation of the statute comes not only from portions of the section's legislative history, but also from legal tradition. Section 1322(c)(1) deals exclusively with property that usually qualifies as the homestead of the debtor under state law. Homestead laws have traditionally been liberally construed in favor of maintaining the homestead. *Bank of Sun Prairie v. Hovig,* 218 F.Supp. 769, 783 (W.D.Ark. 1963) (quoting 26 Am.Jur. Homestead § 11).

The legislative history of section 1322(c)(1) is consistent with the construction that applicable state law controls when a sale is 'final' for the purpose of fixing the termination point for the right to cure default. Furthermore, many courts have construed this section in this fashion. *In re Ross,* 191 B.R. 615, 618 (Bkrtcy.D.N.J.1996). Thus, the Court will look to state law to determine when a statutory foreclosure sale is final.

---

**2.** Compare, for example, the house committee report, suggesting that all steps in a foreclosure sale must be completed before the debtor will lose cure rights, with the floor remarks of Senator Grassley, who seems to advance the brightline approach that cure rights are severed by the auction:

The Roach case, however, held that the debtor's right to cure was extinguished at the time of the foreclosure judgment which occurs in advance of the foreclosure sale. This decision is in conflict with the fundamental bankruptcy principle allowing the debtor a fresh start through bankruptcy. This section of the bill safeguards a debtor's rights in a Chapter 13 case by allowing the debtor to cure home mortgage defaults at least through *completion of a foreclosure sale* under applicable nonbankruptcy law. However, if the

state provides the debtor more extensive "cure" rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy … 140 Cong.Rec. H10,769 (daily ed. October 4, 1994).

MR. GRASSLEY:

Title III of the bill will assist homeowners. Some homeowners attempt to prevent their homes from being foreclosed upon, even though a bankruptcy court (sic) has ordered a foreclosure sale. There may be several months between the court order and the foreclosure sale. Section 301 will preempt conflicting state laws, and permit home-owners to present a plan to pay off their mortgage debt until the foreclosure sale actually occurs. 140 Cong.Rec. S14462 (daily ed. October 6, 1994)(floor statement of Sen. Grassley).

### WHEN IS A NON–JUDICIAL SALE FINAL UNDER ARKANSAS LAW?

Arkansas law permits two types of foreclosure actions, commonly referred to as judicial and non-judicial or statutory foreclosure.[3]

The process of judicial foreclosure includes the filing of a complaint for foreclosure in the appropriate chancery court, the entry of a foreclosure decree, an auction, the entry of an order confirming the sale, and execution and delivery of a deed by the commissioner appointed by the court. Ark.Code Ann. §§ 18–49–101 to 116 (Michie 1987 & Supp. 1997). *See, e.g., Fleming v. Southland Life Ins. Co.,* 263 Ark. 272, 273, 564 S.W.2d 216, 217 (1978); *Robbins v. Guy,* 244 Ark. 590, 426 S.W.2d 393 (1968). Arkansas courts have long held that a judicial foreclosure sale is not complete until confirmation by the court. *Dellinger v. First Nat'l Bank,* 333 Ark. 460, 464, 970 S.W.2d 223, 225 (1998); *Fleming,* 263 Ark. at 272, 564 S.W.2d at 216; *Wells v. Rice,* 34 Ark. 346 (1879).

Arkansas' non-judicial foreclosure procedure, unlike judicial foreclosure, does not require oversight by the court. *See* Ark. Code Ann. §§ 18–50–101 to 116 (Michie Supp.1997). Under a non-judicial foreclosure, the trustee of a deed of trust or a mortgagee of a mortgage files a notice of default and intention to sell, publishes a notice of the intended sale in a newspaper, and conducts an auction either at the property being sold or at the front door of the appropriate county courthouse. Ark.Code Ann. §§ 18–50–105, 107(a) (Michie Supp.1997). The successful bidder at the sale must pay the full purchase price (or credit bid) at the sale, and the mortgagee has ten days to deliver a trustee's deed to the purchaser, who is entitled to possession upon the record-ing of the deed. Ark.Code Ann. § 18–50–107(d) & (e) (Michie Supp.1997). Once property is "sold," the mortgagor has no right of redemption or any other equity interest in the property. Ark.Code Ann. § 18–50–108(a) & (b) (Michie Supp.1997). An affidavit of sale must be mailed to all persons entitled to notice of default and intention to sell and must be recorded within 10 days after a sale. Ark.Code Ann. § 18–50–110 (Michie Supp. 1997).

The appellate courts of Arkansas have not ruled on the question of precisely when, in the process of a non-judicial foreclosure, the sale is final. Another Bankruptcy Court in this jurisdiction has concluded that a non-judicial foreclosure sale is final upon the acceptance of the highest bid at the auction and the tender to the mortgagee of the purchase funds. *In re Bland,* 227 B.R. 163, (Bankr.E.D.Ark.1998). With all due respect, this Court disagrees with the holding in *In re Bland.*

*Bland* is premised on a comparison of a non-judicial foreclosure sale to an execution sale conducted by a sheriff pursuant to state statute. *See* Ark.Code Ann. §§ 16–66–101 to 507 (Michie 1987 & Supp.1997). The Court in *Bland* determined that under Arkansas law, a sale of property at an execution sale is complete when the hammer at auction falls and funds for the purchase price have been tendered. *In re Bland,* 227 B.R. at 165 (citing *Collins v. Heitman,* 225 Ark. 666, 284 S.W.2d 628 (1955); *Coulter v. Blieden,* 104 F.2d 29, 33 (8th Cir.1939), *cert. denied,* 308 U.S. 583, 60 S.Ct. 106, 84 L.Ed. 488 (1939); *State v. Lawson,* 14 Ark. 114 (1853); *Ex Parte State and State Bank,* 15 Ark. 263, 267 (1854); *In re Engles,* 193 B.R. 23 (Bankr. S.D.Cal.1996)).[4]

---

**3.** For a discussion of the state's judicial and statutory foreclosure procedures, see Edward H. Schieffler, Legislative Note, "Nonjudicial Foreclosure in Arkansas with the Statutory Foreclosure Act of 1987," 41 Ark. L.Rev. 373 (1988).

**4.** The cases cited in *Bland* do not support the conclusion that Arkansas case law holds that an execution sale is final when the auctioneer's hammer falls. *Collins v. Heitman* did not concern an execution sale but rather a private auction and the effect of an Arkansas statute re-pealed in 1987. 284 S.W.2d at 630. The facts in *Coulter v. Blieden* involved a trustee sale in bankruptcy and did not construe any Arkansas statute dealing with execution sales. 104 F.2d at 33. Neither *State v. Lawson* nor *Ex Parte State and State Bank* gave information about the finality of an execution sale. 14 Ark. at 114, 15 Ark. at 264. *In re Engles* discussed the finality of a foreclosure sale as defined by California statute, which stated specifically when a foreclosure sale was final. 193 B.R. at 23.

Based on the comparison of an execution sale to a non-judicial foreclosure sale, the *Bland* court concluded that a non-judicial foreclosure sale should also be considered final with the fall of the hammer at the auction and the tender of purchase money. However, in this Court's view, execution sales are not comparable to statutory foreclosure sales of a debtor's personal residence.

Several fundamental differences distinguish a non-judicial foreclosure sale from an execution sale. First, the issue in this case and in *Bland* concerns a non-judicial foreclosure of a debtor's personal residence, which is the debtor's homestead. Execution sales, on the other hand, generally do not concern the sale of the debtor's personal residence because homesteads are exempt from most execution sales. Ark. Const. art. IX, § 3; Ark.Code Ann. § 16–66–210(b) (Michie 1987 & Supp.1997); *Bank of Sun Prairie v. Hovig,* 218 F.Supp. 769 (W.D.Ark.1963).

Second, a sheriff or other officer conducts an execution sale, which may be upon a credit of three to six months in the case of real property. Ark.Code Ann. § 16–66–413(a)(1) (Michie 1987). In contrast, a statutory foreclosure sale cannot be upon credit, but the purchaser must instead pay the price bid at the time of the auction. Ark.Code Ann. § 18–50–107(d) (Michie Supp.1997).

Third, the successful bidder at an execution sale does not receive a deed at the auction but rather a certificate of sale. Ark. Code Ann. § 16–66–501 (Michie 1987). The sale is subject to the judgment debtor's right of redemption, which may be exercised up to twelve months after the auction. Ark.Code Ann. § 16–66–502 (Michie 1987). Only after this period of redemption has expired is the purchaser entitled to a deed and possession of the property. Ark.Code Ann. § 16–66–507 (Michie 1987). Under a statutory foreclosure proceeding, the purchaser must be given a deed within ten days of the auction, and upon recording of the deed, the purchaser is entitled to possession of the property. Ark.Code Ann. § 18–50–107(d) & (e) (Michie Supp. 1997). The debtor does not have a right to redeem the property after the statutory sale is complete. Ark.Code Ann. § 18–50–108(b) (Michie Supp.1997).

■ A statutory foreclosure of a lien in real property involves a process occurring in increments over time, the auction being only one of those increments or steps. The statute dealing with non-judicial foreclosure specifically provides that a purchaser's right to possession exists, not upon completion of the auction, but upon the filing of record of the trustee's or mortgagee's deed, which occurs sometime after the auction. Ark.Code Ann. § 18–50–107(e) (Michie Supp.1997).

According to one authority on real property, "the single most salient characteristic [of a present estate in land is] the present right to exclusive possession of a particular parcel of land." Roger A. Cunningham et al., The Law of Property § 2.1, at 26 (West 2d ed.1993). Thus, if the right to possession, arguably the most important of the various rights attendant to property ownership, vests in the purchaser when the mortgagee's deed is recorded, then it is logical to find that the "foreclosure sale" is complete with the recording of the deed, which triggers right to possession. This interpretation serves to preserve the Debtor's homestead and is consistent with the longstanding principle that laws dealing with a debtor's homestead are construed liberally in favor of the debtor. *Bank of Sun Prairie v. Hovig,* 218 F.Supp. 769 (W.D.Ark.1963). This interpretation also furthers the bankruptcy policy of allowing a debtor to cure a home mortgage default through a chapter 13 plan.

■ Therefore, under Arkansas law, a statutory foreclosure sale conducted pursuant to sections 101 to 116 of Chapter 50 of Title 18 of the Arkansas Code Annotated is complete when a trustee's or mortgagee's deed is recorded.[5] In this case, the deed was

---

5. Whether a completed sale may be set aside by collateral attack is an issue not addressed in this case. *See, Henson v. Fleet Mtg. Co.,* 319 Ark. 491, 892 S.W.2d 250 (1995); *In re Henson,* 157 B.R. 867 (Bankr.W.D.Ark.1993); *Matlock v. Lomas Mtg. U.S.A. Inc.,* 154 B.R. 721 (Bankr.

E.D.Ark.1993). Furthermore, filing the affidavit of sale after recording the mortgagee's deed does not alter the date the sale is complete because filing of the affidavit is clearly ministerial in nature.

not recorded at the time the bankruptcy petition was filed. Therefore, the Debtor may cure the default under the applicable provisions under Title 11. The motion for relief is denied, the objection to confirmation is overruled, and the plan is confirmed.

IT IS SO ORDERED.