In re Lynda Gayle JENKINS, Debtor.

No. 4:08–bk–17426M.

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

Jan. 12, 2010.

Jimmy D. Eaton, Attorney at Law, N. Little Rock, AR, for Debtor.

*ORDER*

JAMES G. MIXON, Bankruptcy Judge.

Pending before the Court is an objection to confirmation of a Chapter 13 plan and a motion for relief from the automatic stay, both filed by CitiMortgage, Inc. in the bankruptcy case of Lynda Jenkins, Debtor. In her plan, the Debtor proposes to cure an arrearage on a mortgage indebtedness secured by her principal residence pursuant to Section 1322(c)(1) of the bankruptcy code.

CitiMortgage objects to confirmation on the grounds that the residence was sold prior to the bankruptcy filing at a foreclosure sale in compliance with the Statutory

Foreclosure Act of 1987 of the State of Arkansas (hereinafter "Foreclosure Act"). CitiMortgage asserts that under these circumstances, the bankruptcy code does not permit the Debtor to cure her mortgage arrearage and resume monthly mortgage payments under the plan. Therefore, CitiMortgage argues, her plan is not confirmable and CitiMortgage is entitled to relief from the automatic stay to enforce its right to possession of the property.

The Debtor asserts that her plan complies with the bankruptcy code because, while the auction occurred prior to the bankruptcy petition filing, the sale was not finalized until after the bankruptcy filing. She also seeks to invalidate the foreclosure sale because she contends that CitiMortgage did not strictly comply with the requirements set out in the Foreclosure Act. Because the Court rules that the sale was not final at the conclusion of the auction and that the Debtor's proposed plan complies with the bankruptcy code, the Court finds it unnecessary to address the Debtor's second argument.

The matters before the Court are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to enter a final judgment in this case.

## FACTS

The parties have stipulated to the following facts:

1. CitiMortgage, Inc. is the servicer of the deed of trust and note originally executed by Lynda G. Jenkins on November 19, 2007, securing payment in the principal sum of $90,578.00 to Mortgage Electronic Registration Systems, Inc. and Primary Residential Mortgage, Inc.'s successors and assigns.

2. The parties agree that the deed of trust was properly executed and recorded and that it granted a valid lien against the homestead of the Debtor.

3. The Debtor defaulted on the terms of the deed of trust and note.

4. A limited power of attorney was recorded on July 9, 2007, as Instrument Number 2007053255, records of Pulaski County, Arkansas, and a true and correct copy was submitted into evidence as Plaintiff's Exhibit A.

5. A substitution of trustee was recorded on September 11, 2008, as Instrument Number 2008062648, records of Pulaski County, Arkansas, and a true and correct copy was submitted into evidence as Plaintiff's Exhibit B.

6. The foreclosure sale was conducted at 11:00 a.m. on November 18, 2008.

7. The Debtor's Chapter 13 petition was filed on November 26, 2008, at 11:20 a.m.

8. CitiMortgage, Inc., the movant, was the purchaser at the sale.

9. A trustee's deed was recorded on November 26, 2008 at 12:38:04 p.m. as Instrument Number 2008079934, records of Pulaski County, Arkansas. A true and correct copy of the document was submitted into evidence as Plaintiff's Exhibit C.

10. A copy of the power of attorney appointing Wilson and Associates, PLLC as agent for CitiFinancial, Inc. for the purpose of appointing a successor trustee, Plaintiff's Exhibit A, was not attached to the substitution of trustee or the trustee's deed.

11. The Debtor's Chapter 13 Plan provides for the payment of the current monthly mortgage payment of

$757.00 and the sum of $159.12 a month to cure an arrearage.

12. All other factual aspects of the sale, except where noted above under item 10, strictly complied with the Foreclosure Act procedures.

(Transcript of Hearing on Motion for Relief from Stay and Objection to Confirmation, June 26, 2009, Plaintiff's Ex. A, B, C, & D.)

## APPLICABLE BANKRUPTCY AND STATE LAW

The Bankruptcy Code provides that a Chapter 13 debtor may propose a plan to cure a home mortgage default only if the property has not been sold in foreclosure:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> (3) provide for the curing or waiving of any default.
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
>
> . . .
>
> (c)(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law;

11 U.S.C. § 1322(b)(3), (5) & (c)(1) (2006).

The issue of when a statutory foreclosure sale is complete under Arkansas law was previously before the Court in the case of *In re Tomlin*, 228 B.R. 916 (Bankr. E.D.Ark.1999). The *Tomlin* opinion expressed disagreement with a previous decision by Judge Mary Scott of this Court, *In re Bland*, 227 B.R. 163 (Bankr.E.D.Ark. 1998). In *Bland*, the court reasoned that the sale was completed at the conclusion of the foreclosure auction. In *Tomlin*, this Court concluded that a foreclosure sale under the Foreclosure Act is complete upon the recording of the Trustee's or Mortgagee's Deed and only then is the property "sold" for purposes of Section 1322(c)(1) of the bankruptcy code. Then, as now, the appellate courts of the State of Arkansas had not had occasion to rule on the issue of when a foreclosure sale is final or complete.

When the Court first addressed this issue in *Tomlin*, it traced the background of section 1322(c)(1) and discussed the two interpretations of the statutory language "sold at a foreclosure sale":

> In 1987, the Court of Appeals for the Third Circuit held that the entry of the foreclosure judgment, not the conclusion of the sale, severed a debtor's right to cure a delinquent note secured by a mortgage in the debtor's personal residence. *In re Roach* 824 F.2d 1370 (3rd Cir.1987). In response to the decision in *In re Roach*, Congress enacted, as part of the Bankruptcy Reform Act of 1994, section 1322(c)(1), which states that a debtor may cure and reinstate a home mortgage until the property is sold in a foreclosure sale.
>
> This attempt by Congress to clarify when the debtor loses his right to cure a defaulted mortgage has been unsuccessful. Some courts have declared that the language of 11 U.S.C. § 1322(c)(1) is clear and unambiguous. These courts have followed the bright-line approach that the cure provisions of 11 U.S.C. § 1322 are only available prior to the date of the foreclosure auction. *See, e.g., McCarn v. WyHy Fed. Credit Un-*

*ion (In re McCarn)*, 218 B.R. 154, 161 (10th Cir. BAP 1998); *Cottrell v. United States (In re Cottrell)*, 213 B.R. 378, 381 (Bankr.M.D.Ala.1996) (quoting *In re Smith*, 85 F.3d 1555 (11th Cir.1996)); *In re Ziyambe*, 200 B.R. 790, 794 (Bankr. D.N.J.1996); *In re Sims*, 185 B.R. 853, 865–66 (Bankr.N.D.Ala.1995).

Other courts have found the language of 11 U.S.C. § 1322(c)(1) ambiguous and have resorted to an analysis of legislative history to resolve the ambiguity. These courts generally favor a more liberal statutory interpretation that a debtor's right to cure is severed at the point when the foreclosure sale, as distinguished from the auction, has been completed under state law. *See, e.g., Christian v. Citibank*, 214 B.R. 352, 355 (N.D.Ill.1997); *In re Downing*, 212 B.R. 459, 461 (Bankr.D.N.J.1997); *In re Ross*, 191 B.R. 615, 618 (Bankr.D.N.J. 1996); *In re Barham*, 193 B.R. 229, 231–32 (Bankr.E.D.N.C.1996); *In re Reid*, 200 B.R. 265 (Bankr.S.D.Fla.1996)(quoting *In re Jaar*, 186 B.R. 148 (Bankr. M.D.Fla.1995)); *In re Blair*, 196 B.R. 477, 479–80 (Bankr.E.D.Ark.1996); *In re Ross*, 191 B.R. 615, 618 (Bankr.D.N.J. 1996); *In re Jaar*, 186 B.R. 148, 151–54 (Bankr.M.D.Fla.1995).

The more persuasive of these two competing interpretations is that the statutory language "sold at a foreclosure sale that is conducted in accordance with applicable non-bankruptcy law" is am-

biguous. The term "foreclosure sale" could refer either to the foreclosure process under state law, which is conducted in numerous stages, or to the foreclosure auction. If Congress had intended to sever a debtor's ability to cure a delinquent mortgage on the date of the auction, which is typically only one step in the foreclosure sale process, it could have easily done so. One leading commentator has found significance in the fact that the statute does not pinpoint a specific event as a cut-off point of the debtor's cure rights. 8 Collier on Bankruptcy ¶ 1322.15 (Lawrence P. King et al. eds. 15th ed. rev. 1998) ("It may well be significant that Congress did not say that a debtor may cure 'until the sale,' or 'until the date of the foreclosure sale,' indicating that completion of the sale might be on a later date than the date of the auction").

Courts routinely examine legislative history when resolving statutory ambiguity. But as the court in *In re McCarn* accurately observed, portions of the legislative history of section 1322(c)(1) are contradictory and seem "to advocate components of both approaches employed by courts prior to the passage of 11 U.S.C. § 1322(c)(1)...." 218 B.R. at 154, 161 n. 5.[1]

MR. GRASSLEY:

---

1. Compare, for example, the house committee report, suggesting that all steps in a foreclosure sale must be completed before the debtor will lose cure rights, with the floor remarks of Senator Grassley, who seems to advance the bright-line approach that cure rights are severed by the auction:
The Roach case, however, held that the debtor's right to cure was extinguished at the time of the foreclosure judgment which occurs in advance of the foreclosure sale. This decision is in conflict with the fundamental bankrupt-

cy principle allowing the debtor a fresh start through bankruptcy. This section of the bill safeguards a debtor's rights in a Chapter 13 case by allowing the debtor to cure home mortgage defaults at least through *completion of a foreclosure sale* under applicable non-bankruptcy law. However, if the state provides the debtor more extensive "cure" rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy ... 140 Cong.Rec. H10,769 (daily ed. October 4, 1994).

Title III of the bill will assist homeowners. Some homeowners attempt to prevent their homes from being foreclosed upon, even though a bankruptcy court (sic) has ordered a foreclosure sale. There may be several months between the court order and the foreclosure sale. Section 301 will preempt conflicting state laws, and permit homeowners to present a plan to pay off their mortgage debt until the foreclosure sale actually occurs. 140 Cong.Rec. S11462 (daily ed. October 6, 1994)(floor statement of Sen. Grassley).

Support for the more liberal interpretation of the statute comes not only from portions of the section's legislative history, but also from legal tradition. Section 1322(c)(1) deals exclusively with property that usually qualifies as the homestead of the debtor under state law. Homestead laws have traditionally been liberally construed in favor of maintaining the homestead. *Bank of Sun Prairie v. Hovig*, 218 F.Supp. 769, 783 (W.D.Ark.1963) (quoting 26 Am.Jur. Homestead § 11)).

The legislative history of section 1322(c)(1) is consistent with the construction that applicable state law controls when a sale is 'final' for the purpose of fixing the termination point for the right to cure default. Furthermore, many courts have construed this section in this fashion. *In re Ross*, 191 B.R. 615, 618 (D.N.J.1996). Thus, the Court will look to state law to determine when a statutory foreclosure sale is final.

*In re Tomlin*, 228 B.R. at 918–19.[2]

In an apparent response to the ruling in *Tomlin*, the Arkansas legislature amended the Foreclosure Act in 1999. The legislature added the definition contained in Section 18–50–101(8) of the Arkansas Code that provides that a sale under the Foreclosure Act is final when the highest bid is accepted by the person conducting the sale. CitiMortgage contends this section is the governing state law referred to in Section 1322(c)(1) of the bankruptcy code.[3]

---

**2.** Since *Tomlin* examined the two interpretations of section 1322(c)(1), the Court of Appeals for the Third, Sixth, and Seventh Circuit have weighed in on the issue. *See In re Connors*, 497 F.3d 314, 321 (3rd Cir.2007) (holding that a Chapter 13 debtor may cure a default on a home mortgage only until the gavel falls at a foreclosure sale); *Cain v. Wells Fargo Bank (In re Cain)*, 423 F.3d 617, 621 (6th Cir.2005) (same); *Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 920–21 (7th Cir.2003) (examining the law of the State of Illinois in affirming the lower court's ruling that the right to cure a default in bankruptcy is available to the debtor only until the highest bid is entered and accepted at a judicial foreclosure auction).

**3.** The Bankruptcy Court for the Eastern and Western Districts of Arkansas has published opinions by two judges construing the amended Foreclosure Act. See *In re Searcy*, 313 B.R. 439, 443 (Bankr.W.D.Ark.2004)(ruling that dismissed chapter 13 debtors would not be allowed to cure a mortgage default when a dismissed bankruptcy case was reinstated after the foreclosure sale occurred); *In re Cook*, 253 B.R. 249, 253 (Bankr.E.D.Ark.2000)(finding that the highest bid in a statutory foreclosure sale was accepted one day prior to the chapter 13 filing; thus, the sale was final and debtor had no right to cure). *Searcy* is distinguishable from the present case in that the debtors were seeking either retroactive application of the automatic stay or a nunc pro tunc imposition of reinstatement of the case and did not argue that the foreclosure sale had not, in fact, been completed when the case was reinstated. See also *In re Sugarloaf Properties, Inc.*, 286 B.R. 705, 710 (Bankr. E.D.Ark.2002) (interpreting the legal effect of a judicial foreclosure upon debtors' right to cure in bankruptcy but stating in *dicta* that statutory foreclosure sales are complete upon acceptance of the highest bid at auction); *In re Brown*, 282 B.R. 880, (Bankr.E.D.Ark.2002) (holding that debtors maintained a right to cure a mortgage default in a judicial foreclosure until the order confirming the sale was

The Debtor argues that, notwithstanding the 1999 amendments, property sold under the Foreclosure Act is not "sold" for purposes of Section 1322(c)(1) of the bankruptcy code until the Trustee's deed is delivered to the successful bidder at the auction.

## DISCUSSION

As stated above, bankruptcy law dictates that a debtor may propose a chapter 13 plan to cure a default in payment of a debt secured by the debtor's principal residence "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1). Key terms in this statute are the words "foreclosure," "sold," and "applicable nonbankruptcy law."

The word "foreclosure" is defined as a "procedure by which mortgaged property is sold on default of mortgagor in satisfaction of a mortgage debt." Black's Law Dictionary 646 (6th ed. 1990). The word "sold" is the past tense form of the verb "to sell," which ordinarily means "to exchange or deliver for money or its equivalent." American Heritage Dictionary 1177 (1976). The verb "to sell" is defined in legal terms as "to transfer title or possession of property to another in exchange for valuable consideration." Black's Law Dictionary 1360 (6th ed. 1990).

The "applicable nonbankruptcy law" referred to in this instance is the Foreclosure Act, sections 101–117 of Title 18, Chapter 50 of the Arkansas Code. In its brief, CitiMortgage argues that the Court's decision in *Tomlin* was based on the state statute as it was written prior to the 1999 amendments. CitiMortgage refers to language in the *Tomlin* opinion stating that the purchaser at the sale was not entitled to possession, "arguably the

most important of the various rights attendant to ownership," until the trustee's deed was recorded. Thus, CitiMortgage points out, the *Tomlin* opinion concluded that the foreclosure sale was not complete until the deed was recorded, triggering the right to possession. (CitiMortgage Brief at 7 (citing *Tomlin,* 228 B.R. at 921).) CitiMortgage proceeds to argue that the 1999 amendments were designed "to remedy the issues addressed in *Tomlin.*" (CitiMortgage Brief at 7.)

Under the amended Foreclosure Act, the mortgagee, trustee or beneficiary of a mortgage or deed of trust files a notice of default and intention to sell with the recorder of the county in which the trust property is situated. Ark.Code Ann. § 18–50–103(3) (Michie 2003). The Trustee's notice of default and intention to sell must be published in a newspaper, and the Trustee must conduct an auction either at the premises being sold or at the front door of the county courthouse of the county in which the trust property is situated. Ark.Code Ann. § 18–50–105(1) & 107(a)(2) (Michie 2003). Unless otherwise agreed to by the Trustee or Mortgagee, the purchaser shall pay the bid price at the time of the sale (auction). Ark.Code Ann. § 18–50–107(d)(1) (Michie 2003). Within ten days after the sale, the mortgagee or trustee shall execute and deliver the Trustee's Deed or Mortgagee's Deed to the purchaser. Ark.Code Ann. § 18–50–107(d)(3) (Michie 2003).

The purchaser at the sale shall be entitled to immediate possession of the property. Ark.Code Ann. § 18–50–107(e)(1) (Michie 2003). Possession may be obtained by filing a complaint in the circuit court of the county in which the property lies with a copy of the recorded Trustee's or Mort-

entered but stating in *dicta* that the result might be different had the mortgagee pro-

ceeded under the Statutory Foreclosure Act as amended).

gagee's Deed attached. Ark.Code Ann. § 18–50–107(2)(A) (Michie 2003). A sale terminates all rights of redemption, and no person is entitled to redeem the trust property after a sale, notwithstanding that the deed to and possession of the trust property have yet to be delivered. Ark. Code Ann. § 18–50–108(b)(Michie 2003).

At any time prior to the delivery of the Trustee's or Mortgagee's Deed, the Trustee or Mortgagee is authorized to set aside a sale conducted pursuant to the Foreclosure Act by declaring the sale null and void and returning the purchase price to the highest bidder without any further liability to the bidder. Ark.Code Ann. § 18–50–116(e)(1) (Michie 2003). The amended statute defines "sale" as "the public auction conducted pursuant to § 18–50–107 and shall be deemed concluded when the highest bid is accepted by the person conducting the sale." Ark.Code Ann. § 18–50–101(8) (Michie 2003).

■ After considering the dictates of both section 1322(c)(1) of the bankruptcy code and the state Foreclosure Act, the Court rules that the Debtor's principal residence was not sold in a foreclosure sale under applicable state law. The bankruptcy code's use of the word "sold," which is the past tense of "sell," implies the requirement that the foreclosure process, not just the sale, has been concluded. At odds with this requirement is Section 101(8) of the Foreclosure Act, which asserts that the foreclosure sale is concluded when the highest bid is accepted at the auction, even though other requirements to complete the foreclosure process, such as payment and delivery of deed, may not have occurred. *See, e.g.,* Ark.Code Ann. § 18–50–107(d)(1)(payment of the purchase price shall be paid at the time of sale unless otherwise agreed to by the trustee or mortgagee); Ark.Code Ann. § 18–50–107(2)(d)(3)(the mortgagee or trustee has

ten days after the sale to deliver the deed to the purchaser).

Further, the successful bid at auction is subject to being rejected and the property re-auctioned at the Trustee's sole discretion for any reason at any time prior to the delivery of the Trustee's Deed. Ark.Code Ann. § 18–50–117(e)(1). Thus, immediately after the auction, the successful bidder may not even have an enforceable right to purchase or to possess the property because of the Trustee's absolute right to cancel the sale. Moreover, although the statute provides for the successful bidder to have an immediate right of possession, this right may not be enforced in a civil action unless a copy of the recorded Trustee's or Mortgagee's Deed is attached to the complaint. Ark.Code Ann. § 18–50–107(e)(2)(A). Therefore, the right to possession is illusory until the price is paid and the Trustee's Deed recorded.

■ In the context of 11 U.S.C. § 1322(c)(1), "sold" means the property has been irrevocably transferred. The transfer of real property under Arkansas property law is accomplished by the execution and delivery of a deed to the purchaser who accepts the deed. *Johnson v. Baldridge (In re Baldridge),* 256 B.R. 284, 290 (Bankr.E.D.Ark.2000) (citing *Dawkins v. Petteys,* 121 Ark. 498, 181 S.W. 901 (1915)); *Baldridge v. Baldridge,* 100 Ark.App. 148, 265 S.W.3d 146 (2007)(citing *Harrison v. Loyd,* 87 Ark.App. 356, 192 S.W.3d 257 (2004), *Wilson v. McDaniel,* 247 Ark. 1036, 449 S.W.2d 944, 946 (1970)). A presumption of a valid delivery attaches when a deed is recorded. *Baldridge v. Baldridge,* 100 Ark.App. at 150, 265 S.W.3d at 148 (citing *Corzine v. Forsythe,* 263 Ark. 161, 163, 563 S.W.2d 439, 440 (1978)).

CitiMortgage's argument is premised on the definition of "sale" as the public auction conducted pursuant to Section § 18–50–107 of the Arkansas Code and deemed

concluded when the highest bid is accepted by the person conducting the sale. Ark. Code Ann. § 18–50–101(8)(CitiMortgage Brief at 4). Also, CitiMortgage points out that pursuant to Section 18–50–111 of the Arkansas Code, the Trustee's Deed or Mortgagee's Deed "would relate back to and be deemed effective as of the time of the auction." (CitiMortgage Brief at 7.) CitiMortgage argues that the relation-back concept under these circumstances was approved by the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals. See *Bebensee–Wong v. Federal Nat'l Mortgage Assoc. (In re Bebensee–Wong)*, 248 B.R. 820 (B.A.P. 9th Cir.2000) (construing Cal. Civil Code § 2924h(c)(Deering 2009), a provision of California's nonjudicial foreclosure statute that declares a sale "perfected" as of the day of the auction if the trustee's deed is recorded within 15 days after the sale).

However, the California statute construed by the *Bebensee–Wong* court is dissimilar to the Arkansas statute in that the seller under California law has no right to reject the successful bid except for failure of consideration while under Arkansas law the seller can reject the successful bid for any reason without legal recourse by the successful bidder. Even without this significant difference, this Court is persuaded that under the California statute, the debtor's principal residence remains unsold for purposes of section 1322(c)(2) of the bankruptcy code until the trustee's deed is recorded. Therefore, the *Bebensee–Wong* court's reasoning is unpersuasive.

Under the Foreclosure Act, the acceptance of the bid is, in fact, not the final act required by the state statute to sell the debtor's residence, and at the conclusion of the auction the seller is not even bound by contract to sell at some future date. Because other statutory requirements are yet to be accomplished, labeling the sale as "concluded" when the highest bid is accepted attributes a meaning to the word "sold" that is inconsistent with the common understanding of the word and will not satisfy the provisions of 11 U.S.C. § 1322(c)(1). *See Burgess v. United States*, 553 U.S. 124, 128 S.Ct. 1572, 170 L.Ed.2d 478 (2008) (holding that state statute classifying crime as misdemeanor punishable by a maximum two-year prison sentence is still a felony for purposes of federal law because of common understanding of the word "felony").

The Court concludes that the debtor's principal residence is "sold" for purposes of Section 1322(c)(1) of the bankruptcy code when, under the Foreclosure Act, the consideration is paid and the Trustee's Deed is delivered to the purchaser so that the purchaser's rights cannot be unilaterally avoided and the purchaser has the right to legally enforceable possession. At that point, the debtor is no longer entitled to cure the default as permitted by section 1322(b)(2) of the bankruptcy code. Here, the stipulated facts are that the bankruptcy case was filed before the Trustee's Deed was recorded. Therefore, the Debtor may propose a plan to cure the default, and CitiMortgage has no right to relief from the stay.

## CONCLUSION

Therefore, for these reasons the objection to confirmation is overruled and the motion for relief from the automatic stay is denied.

IT IS SO ORDERED.